**In re the Marriage of Delores F. MOON, petitioner, Respondent,**

v.

**Robert J. MOON, Appellant.**

**No. CO–85–471.**

Court of Appeals of Minnesota.

Nov. 26, 1985.

Thomas J. Reif, Alexandria, for petitioner, respondent.

Charles A. Krekelberg, Pelican Rapids, for appellant.

Heard, considered, and decided by SEDGWICK, P.J., and PARKER and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This appeal is from a dissolution judgment. Both parties contest the trial court's award to appellant, Robert Moon, of $200 per month maintenance for ten years. Appellant claims that his maintenance should be permanent. Respondent, Delores Moon, contests the propriety of any maintenance, the trial court's award of a portion of an asset to appellant as nonmarital, and the trial court's division of the marital estate.

## FACTS

The parties were married in 1964. Dawnette Moon, the parties' daughter, was born in 1967. She resides at the Red Wing Health Care Center for Physically Handicapped Young Adults. She suffered a closed brain injury in an accident and is severely physically disabled. The parties agree that Dawnette Moon should continue to reside at the Red Wing center. Delores Moon is the court-appointed guardian ad litem for Dawnette Moon. The trial court awarded joint physical and legal custody to the parties. This decision is not contested.

Delores Moon was born August 22, 1941. She is a high school graduate. Since 1971 she has been employed by the U.S. postal service. She has been postmaster of the Nelson, Minnesota, post office since 1974. Before 1971 she worked at least part-time as a hairdresser.

Robert Moon was born February 17, 1937. He is a high school graduate and attended college for one year. He worked for the postal service from 1965 to 1982. Beginning in 1972 he suffered from multiple sclerosis. By 1982 the disease forced him to end his employment. The postal service considers him 100% disabled.

Respondent's net monthly income is $1,509.00. This represents $1,409.00 from her employment, and $100.00 from a contract for deed. At trial, respondent claimed expenses of $1,395.00 per month.

Appellant's net monthly income is $841.45. This represents a $528.95 disability payment, $62.50 rent from land, and periodic cash gifts from his parents amounting to approximately $250.00 a month. At trial, appellant claimed monthly expenses of $1,524.00.

The trial court found that appellant "hopes to qualify for Social Security within

two to three years. Social Security Disability benefits upon qualification might increase his net monthly income $70.00 to $120.00." Appellant had applied for Social Security disability previously and was turned down, for reasons not in the record. If appellant eventually qualifies for Social Security benefits, he would do so through the income earned from the hobby farm.

The trial court further found that appellant "is disabled and will never be able to return to work." The trial court awarded appellant maintenance of $200 per month for a period of ten years. Appellant claims that the trial court erred in not awarding him permanent maintenance.

In 1967 the parties purchased their homestead for $10,000.00. Nine thousand dollars was borrowed from appellant's parents, and both parties signed a note and a mortgage in favor of appellant's parents. Payments were made on the note until 1973, when the parents forgave the $7,000.00 balance. The trial court found that this forgiveness created a nonmarital interest of the appellant in the homestead. Respondent claims this decision was erroneous.

Respondent also claims that the trial court improperly applied the *Schmitz*[1] formula to determine appellant's interest in the homestead.

### ISSUES

1. Did the trial court abuse its discretion in awarding appellant $200.00 per month temporary maintenance for a period of ten years?

2. Did the trial court err in finding that forgiveness of the debt owed appellant's parents created a nonmarital interest?

3. Was the trial court's division of the marital estate clearly erroneous?

### ANALYSIS

#### I.

*Maintenance*

The trial court awarded appellant $200.00 per month maintenance for ten years. Ap-

pellant claims that the trial court abused its discretion in not awarding permanent maintenance. Respondent questions the propriety of any award of maintenance.

The standard of review on appeal from a trial court's award of maintenance is whether the trial court abused its discretion. *Lillehei v. Lillehei*, 298 N.W.2d 453, 454 (Minn.1980); *Frederiksen v. Frederiksen*, 368 N.W.2d 769, 775 (Minn.Ct.App. 1985). For the reasons stated below, we affirm the trial court's award and remand for retention of jurisdiction.

#### A. *Award of maintenance*

In awarding maintenance, "the court should balance the dependent spouse's needs and ability to meet those needs against the supporting spouse's financial condition and needs." *Frederiksen*, 368 N.W.2d at 775 (citation omitted). Minn.Stat. § 518.552, subd. 1 (1984), in effect at the time of trial, provides that courts may grant maintenance if a spouse lacks sufficient property to provide for his reasonable needs and is unable adequately to support himself.

The evidence shows that appellant lacks sufficient property to pay for his reasonable needs. Appellant was awarded all rights to his future pension, which he earned in the postal service. That pension, based on approximately seventeen years of service, is vested but is not currently payable. The record does not disclose when it will become payable and whether or not it will replace, diminish, or affect his present disability payments. The present cash value of appellant's pension, approximately $10,000, was awarded to him and the present cash value of respondent's pension, approximately $13,000, was awarded to her. Appellant was awarded the homestead, but must make the mortgage payments of $264.00 per month, along with utilities and other house-related expenses. The hobby farm awarded appellant pro-

1. *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn.  1981).

vides $62.50 per month rental income. Appellant's total net monthly income, as found by the trial court, is $841.45, including money gifts to appellant from his parents.

Meaningful appellate review of maintenance awards is furthered by a record with specific findings regarding each parties' income and expenses. The better practice is to make specific findings in order to facilitate application of the statute at both the trial and appellate levels. Although the court did not make specific findings as to expenses, both parties entered into evidence schedules of expenses which the trial court considered in making the maintenance award. Neither party disputed the other's claimed expenses. Because neither party disputed the claimed expenses, and because the trial court considered the schedules, they provide the necessary support in the record for the trial court's award.

Appellant testified to monthly expenses of $1,524.00, substantially more than his income.

■ The trial court considered respondent's income and expenses. Her net monthly income is $1,509.00. She testified to expenses of $1,395.00 per month. Given each parties' income and expenses, and considering the stability of respondent's work and the state of appellant's health, the trial court did not abuse its discretion in awarding maintenance.

B. *Amount and duration of maintenance*

■ Appellant claims the court erred in not awarding permanent maintenance. Minn.Stat. § 518.552, subd. 2 (1984) sets forth the factors affecting the amount and duration of maintenance.

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his *ability to meet his needs independently,* including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the spouse's age and skills, of completing education or training and becoming fully self-supporting;

(c) The standard of living established during the marriage;

(d) The *duration of the marriage* and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) The age, and the *physical* and emotional *condition* of the spouse seeking maintenance;

(f) The *ability* of the spouse from whom maintenance is sought *to meet* his *needs* while meeting those of the spouse seeking maintenance; and

(g) The contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker.

Respondent claims that the court failed to take into consideration income lost when she cares for Dawnette Moon in her home approximately five days per month during the warmer months of the year. Respondent apparently is not paid for the time she misses work while caring for Dawnette Moon in her home. The record shows that the trial court took this into account when it determined the amount of maintenance:

The Court is mindful of the extra needs and expenses of the Petitioner which arise because of the unfortunate accident to their daughter and [has] taken this into consideration in setting maintenance. For that reason maintenance has been set at a low amount, an amount which the Petitioner should be able to pay without undue hardship.

The trial court properly considered the expenses associated with respondent's care of Dawnette Moon.

The record also shows that the trial court appropriately considered appellant's monthly income of $841.15 and expenses of $1,524.00 and respondent's income of $1,509.00 and expenses of $1,395.00 when setting maintenance at $200.00 per month. Appellant's physical condition warrants a lengthy award of maintenance. Appellant submitted deposition testimony of Randall Schapiro, M.D., director of one of the larger multiple sclerosis programs in the country. He testified that fatigue and leg and foot weakness were the primary limits on appellant's employability, and that most people with his severity of multiple sclerosis are not employed. Appellant uses a wheelchair at times to reduce fatigue. Schapiro testified that it is unlikely appellant will improve, and he will probably worsen. What medical evidence there is in the record supports appellant's contention that he is basically unemployable with little likelihood of change.

The long duration of the marriage supports an award of maintenance.

■ The trial court did not indicate why maintenance terminates after ten years. No evidence indicated when appellant's postal pension would become available to him or what effect that would have on his monthly income. No evidence indicated when respondent could or would retire. No review of maintenance is provided for should appellant receive social security disability. The court should have retained jurisdiction over maintenance for this disabled, unemployable spouse after the ten year period.

As we did in *Peterson v. Peterson*, 367 N.W.2d 90 (Minn.Ct.App.1985), we remand for retention of jurisdiction over maintenance. The facts necessitating retention of jurisdiction here are stronger than those in *Peterson*. Here the spouse seeking maintenance is totally disabled and unemployable. His physical condition will probably worsen by the time his ten years of maintenance are over. He must use a wheelchair periodically. His income and property awarded him are inadequate to meet his needs, and his future is uncertain.

In examining each party's schedule of expenses, we note a duplication of travel expense to and from Red Wing, Minnesota, for visitation. Given the limited funds available and with the desire of both parents to maintain regular visitation with their child, perhaps some sharing of travel expense to and from Red Wing could be explored.

We affirm the amount of maintenance and its duration but remand for retention of jurisdiction.

## II.

### *Nonmarital interest in homestead*

The trial court found that appellant has a nonmarital interest in the parties' homestead arising from his parents' gift of forgiveness of $7,000.00 due on a loan owing his parents. Applying the *Schmitz* formula, appellant's current nonmarital interest in the home was found to be $22,680.00. In 1967, the parties purchased their homestead for $10,000.00. Nine thousand dollars was borrowed from appellant's parents, and both parties signed a note and mortgage in favor of appellant's parents. Payments were made on the note until 1973, when the parents forgave the $7,000.00 balance. The parties held the homestead in joint tenancy.

The trial court has broad discretion in dividing marital property and will be reversed only for a clear abuse of discretion. *Faus v. Faus*, 319 N.W.2d 408, 412 (Minn. 1982). *Bogen v. Bogen*, 261 N.W.2d 606, 609 (1977). If the trial court's property division has a reasonable and acceptable basis in fact and principle, we must affirm, even though we might have made a different decision were we to review the matter *de novo*. *Bollenbach v. Bollenbach*, 285 Minn. 418, 426–27, 175 N.W.2d 148, 154 (1970). Because evidence supported the trial court's determination, we affirm.

■ Appellant testified that he and respondent went to his parents to make a payment on the note, and his father gave him a note stating that the balance was

paid in full. Appellant understood that this was a gift to him personally. Appellant further testified that his parents gave his brother $7,000.00 at about the same time and this gift was intended to match the one to appellant. Appellant testified that his parents always gave gifts to respondent and him separately, and that his parents never gave gifts of money to the parties jointly. An affidavit of appellant's father was accepted into evidence. It stated that the father made the loan to appellant and forgave appellant the $7,000.00 balance in 1973. Respondent testified that appellant's parents meant the forgiveness to be a gift to both parties. Appellant's evidence provided an acceptable basis for the trial court's finding that the forgiveness was a gift to appellant alone, and we affirm the trial court.

Respondent argues that because the title to the homestead was held jointly, the trial court erred in finding a nonmarital interest in the homestead. Respondent was legally obligated to pay the promissory note, and the forgiveness released her from liability. *Berry v. Breslain,* 352 N.W.2d 516, 517 (Minn.Ct.App.1984), states that "the form of ownership is not dispositive of its marital or nonmarital nature." Although the joint ownership, coupled with respondent's testimony, could have justified a finding that the forgiveness was marital property, it was not a clear abuse of discretion for the trial court to accord more weight to appellant's evidence.

Our recent decision of *Wehner v. Wehner,* 374 N.W.2d 569 (Minn.Ct.App. Oct. 1, 1985) does not conflict with our decision here. That case affirmed a trial court's characterization of property as marital. Given the discretion accorded a trial court in resolving conflicting oral testimony, the decision in *Wehner* was within the permissible bounds of trial court discretion just as the trial court decision here to characterize the property as nonmarital is permissible.

The trial court applied the *Schmitz* formula to appellant's nonmarital interest to calculate the amount of appellant's interest in proportion to the homestead's current value. Respondent claims that the trial court improperly applied the *Schmitz* formula.

Respondent raises this issue for the first time on appeal. It was not raised at trial or in post-trial motions. A party generally cannot raise an issue for the first time on appeal. *Morton v. Bd. of Comm'rs,* 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974). "[E]xceptions are made only in cases where to decline review would work an injustice or infringe upon a constitutional right." *Hyduke v. Grant,* 351 N.W.2d 675, 677 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Oct. 16, 1984). Respondent has not demonstrated the requisite injustice here.

### III.

*Property division*

Respondent agrees that if we affirm the trial court's finding that the loan forgiveness created a nonmarital interest, the property division was equitable. We therefore affirm the trial court's division of property.

### DECISION

We affirm the trial court's decision with respect to the award, amount, and duration of spousal maintenance but remand for retention of jurisdiction in accord with this opinion. We affirm the trial court's decision that the forgiveness of debt was a nonmarital gift to appellant and affirm the division of property.

Affirmed in part and remanded in part.