**In re the Marriage of:  Gary T. REYNOLDS, petitioner, Appellant,**

v.

**Valeria D. REYNOLDS, Respondent.**

No. C5–92–1358.

Court of Appeals of Minnesota.

March 30, 1993.

Michael D. Dittberner, Kathleen Worner Kissoon Law Office, Bloomington, for appellant,

Richard J. Krambeer, Henningson & Snoxell, Ltd., Minneapolis, for respondent.

Considered and decided by NORTON, P.J., and SHORT and MULALLY,* JJ.

## OPINION

NORTON, Judge.

Appellant challenges several aspects of the trial court's property division following his marital dissolution. Appellant also challenges the trial court's refusal to re-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

appointment pursuant to Minn.Const. art. VI, § 10.

duce his child support obligation as each child is emancipated. We affirm in part, reverse in part, and remand.

## FACTS

Appellant Gary T. Reynolds and respondent Valeria D. Reynolds were married June 19, 1969, and have four children, three of whom are still minors. The parties separated on February 5, 1990. Appellant served and filed his petition for dissolution of marriage shortly thereafter.

At the time of the parties' separation, the parties held the following parcels of real estate:

(1) Lake McKinney property in Aitkin County;

(2) Nisswa property in Cass County (former homestead of the parties);

(3) 13–unit apartment building in Minneapolis;

(4) Eden Prairie property;

(5) Sherburne County property; and

(6) Patterson Lake Shores property in Cass County.

On August 10, 1990, respondent brought a motion seeking temporary occupancy of the Nisswa property. The court granted this motion on August 17, 1990. On January 28, 1991, respondent brought a motion seeking occupancy of the Eden Prairie property effective June 1, 1991. On February 13, 1991, the trial court issued an order reserving respondent's motion but releasing to the parties the sum of $1000 apiece from the proceeds of the Nisswa property (which had subsequently been sold). On May 16, 1991, the court ordered the release of $5000 to respondent from escrowed Nisswa funds.

On July 12, 1991, respondent. again brought a motion seeking temporary occupancy of the Eden Prairie property effective September 1, 1991. On August 14, 1991, the trial court issued an order granting respondent's motion. The trial court held that, as of September 1, 1991, respondent would be responsible for mortgage payments, homeowner's insurance premiums, utility bills, and real estate taxes due on the property.

Respondent failed to pay the homeowner's insurance premiums billed since August 17, 1991 and the real estate taxes due on October 15, 1991. Therefore, appellant brought a motion requesting that the court order respondent to pay these sums. On January 8, 1992, the court amended its order of August 14, 1991 to require appellant to pay those sums for the second half of 1991. The court noted that appellant had collected rents from the Eden Prairie property from February 1990 through August 31, 1991 and had escrowed these funds precisely for the payment of insurance payments and real estate taxes.

The dissolution judgment was entered April 24, 1992. The trial court found that appellant is currently employed by Burgundy Properties on a part-time basis with a net monthly income of approximately $676.74. The court noted that appellant is licensed as a real estate agent and an insurance agent, has earned up to $32,000 per year in the past, and perhaps has the ability to earn that much in the future. Therefore, the court stated that it would award a disproportionately larger amount of the parties' property to respondent to compensate for the higher amount of child support to which she would be entitled if appellant earned what he is capable of earning. The court found that respondent is a certified teacher in Minnesota with income of $90 per week from a newspaper route. Respondent earned $180 during the 1991–92 school year from substitute teaching.

In addition to the aforementioned real property, the court found that the parties owned the following assets:

(1) $700 proceeds from sale of a Yamaha motorcycle;

(2) $2500 proceeds from various garage sales;

(3) various household goods, furniture, appliances, and other miscellaneous personal property;

(4) R & H Apartments checking account used to pay expenses in connection with 13–unit apartment building;

(5) approximately $2500 left from respondent's $7500 share from sale of her mother's homestead, all of which is respondent's nonmarital property. (Respondent has withdrawn approximately $5100 from this account to pay for marital debts of the parties);

(6) approximately $22,777 proceeds from sale of property on Lake McKinney in Aitkin County;

(7) approximately $22,712.79 proceeds from sale of parties' former homestead in Nisswa, Minnesota;[1]

(8) A 1984 GMC van with a current value of approximately $1000 and a 1982 Honda automobile with a value of approximately $1000;

(9) A Kemper mutual fund with a value of approximately $5000, which is appellant's nonmarital property; and

(10) Endotronics stock with a value of approximately $2000.

The court also found that appellant failed to pay respondent $475 child support for August 1991. This child support was to have come from the rental income for the Eden Prairie property, management of which was appellant's responsibility. The court found that in 1987 respondent received an inheritance of approximately $65,000, $30,000 of which went toward the downpayment on the parties' former homestead in Nisswa, Minnesota. Another $15,000 went to pay off the encumbrance on the Lake McKinney property, and $7500 went toward the purchase of a 1984 GMC van.

The court ordered appellant to pay respondent child support of $169.19 per month until all of the parties' children reached the age of majority or graduated from high school, whichever later occurred. The court required appellant to pay respondent $475 in child support for August 1991 and $394 for mortgage payments on the Eden Prairie property for August 1991. The court also held that its previous order requiring appellant to pay homeowner's insurance and real estate payments on the Eden Prairie property was appropriate.

The court then ordered the following divisions of property: Appellant was awarded the 1982 Honda automobile. Respondent was awarded the 1984 GMC van. The court awarded respondent the $22,712.79 remaining in escrow from the sale of the Nisswa property and $4287.21 in escrow from the sale of the Lake McKinney property. Respondent was also awarded $2500 from a bank account as part of the $7500 respondent received from the sale of her mother's homestead. For his nonmarital property, appellant was awarded the Kemper Mutual Fund. Appellant was awarded the $700 in proceeds from the sale of the Yamaha motorcycle, the Endotronics stock, and several items of household goods. Respondent was awarded the $5100 from the R & H Apartments account and the $2500 realized from garage sales of personal property.

The court divided the rest of the parties' property as follows: after respondent was allowed $4287.21 from the sale of the Lake McKinney property, and after real estate brokers were paid $2250 for commissions, the remainder of the $22,777 sale price was divided evenly between the parties (approximately $8119.89 to each party). The proceeds from the Nisswa property sale were distributed in the following way: $22,712.79 was awarded to respondent as nonmarital property, $14,251.52 was awarded to appellant for the payment of real property taxes for the 13–unit apartment building, $5000 was awarded to respondent for the children's living and employment search expenses, while the remaining balance was distributed equally between the parties (approximately $1000 per person). Both the 13–unit apartment building and the Sherburne County property were awarded to appellant, while the Eden Prairie property and Cass County property were awarded to respondent.

---

1. At least $30,000 of the downpayment for this property was paid from respondent's nonmarital inheritance. Since this property was purchased for $149,900, respondent's nonmarital percentage in the Nisswa property was 20%.

Applying this percentage to the ultimate sale price of $135,000, respondent is entitled to $27,000 from the proceeds as her nonmarital share (20% × $135,000 = $27,000). *See Brown v. Brown*, 316 N.W.2d 552, 553 (Minn.1982).

Appellant was awarded $161,071.32 of marital property (42.5 percent), while respondent was awarded $217,719.89 (57.5 percent). Appellant received $5000.00 in nonmarital property, while respondent received $29,499.50.

On May 15, 1992, appellant brought a motion for new trial/amended findings. On June 9, 1992, the trial court issued an order amending judgment and decree, and the court entered its amended findings of fact, conclusions of law, order for judgment, and judgment and decree on June 16, 1992. Appellant's motion for a new trial was denied. The only significant change in the court's findings of fact was its explicit finding that respondent would suffer an undue hardship if each party received his or her nonmarital property in full. Notice of appeal was filed July 23, 1992.

## ISSUES

I. Did the trial court abuse its discretion in its distribution of the parties' assets?

II. Did the trial court abuse its discretion in not providing for automatic reductions of appellant's child support obligation as each child becomes emancipated?

III. Did the trial court abuse its discretion in requiring appellant to pay the second half installment of the real estate taxes for 1991 and the homeowner's insurance premiums for the parties' Eden Prairie property?

IV. Did the trial court abuse its discretion in requiring appellant to pay respondent child support from the Eden Prairie property rental income for August 1991?

## ANALYSIS

### I.

The trial court has broad discretion regarding the division of property in marriage dissolutions and will be reversed only for a clear abuse of discretion. *Hein v. Hein*, 366 N.W.2d 646, 649 (Minn.App. 1985). While this court need not defer to a trial court's legal conclusion about the marital or nonmarital nature of property, it must accept the findings of fact supporting that conclusion unless they are clearly erroneous. *Burns v. Burns*, 466 N.W.2d 421, 423 (Minn.App.1991).

### A. Division of marital property.

Minn.Stat. § 518.58, subd. 1 (1992) requires the trial court to make a just and equitable division of marital property. An equitable division of marital property, however, is not necessarily an equal division. *Riley v. Riley*, 369 N.W.2d 40, 43 (Minn.App.1985), *pet. for rev. denied* (Minn. Aug. 29, 1985). In *Nemmers v. Nemmers*, 409 N.W.2d 225 (Minn.App. 1987), this court held that a 63%–37% division of marital property was inequitable where both parties had contributed to the production of marital assets, both parties were employed, and the parties had similar ages and health problems. A similar result was reached in *Ellesmere v. Ellesmere*, 359 N.W.2d 48, 51 (Minn.App.1984). There, this court confirmed that where both parties are in good financial standing and there are no extenuating circumstances, an equal distribution of property is in fact an equitable distribution.

In its April 16, 1992 order, the trial court acknowledged that it was awarding respondent a disproportionately larger share of the parties' marital assets. The trial court reasoned that this was fair because, were it not for appellant's "sporadic employment history and historically low earnings from employment," respondent would receive greater child support and spousal maintenance. Appellant challenges the fairness of the court's property distribution, noting that the court did not suggest or find he was intentionally self-limiting his income.

Even in his current occupation, appellant earns significantly more income than respondent. Appellant earns a net monthly income of approximately $676.74, while respondent's net monthly income is $360. Additionally, respondent earned $180 during the 1991–92 school year from substitute teaching. Based upon these figures alone, it was not an abuse of discretion for the court to award a disproportionate amount of the marital property to respondent. In this case, unlike in *Nemmers*, there is a

fairly significant income disparity between the parties. In addition, the disparity in the amount of marital property distributed to the parties is less than that in *Nemmers* (i.e., 57.5%–42.5% versus 63%–37%). The court's assumption that appellant may someday earn as much as he has in the past, therefore, is largely irrelevant.

▆▆▆ As part of his objection to the trial court's division of marital property, appellant argues that the court improperly failed to consider the capital gains taxes he will incur when he sells the 13–unit apartment. The trial court refused to consider such expenses because it thought they were too speculative. We believe the trial court abused its discretion on this issue. In *Aaron v. Aaron*, 281 N.W.2d 150, 153–54 (Minn.1979), the supreme court held that where the sale of real estate "is required or is likely to occur within a short time after the dissolution," the trial court should consider the tax consequences therefrom. Here, the 13–unit apartment building is currently in foreclosure, with a $340,000 "balloon" due in May 1993. On remand, therefore, the court should consider the capital gains taxes appellant will incur when the property is sold.

### B. Division of nonmarital property.

#### 1. *Unfair hardship.*

In its original April 16, 1992 order, the trial court awarded respondent certain properties in which appellant had nonmarital interests. In doing so, however, the court failed to make the finding of unfair hardship required by Minn.Stat. § 518.58, subd. 2 (1992). In his motion for new trial/amended findings, appellant noted this oversight, whereupon the court amended its findings to explicitly find an unfair hardship.

▆▆▆ A very severe disparity between the parties is required to sustain a finding of unfair hardship necessary to apportion nonmarital property. *Ward v. Ward*, 453 N.W.2d 729, 733 (Minn.App.1990), *pet. for rev. denied* (Minn. June 6, 1990). In *Dammann v. Dammann*, 351 N.W.2d 651 (Minn.App.1984), this court held that no

undue hardship existed where the respondent, who had been awarded a disproportionately large share of nonmarital property, earned more money than the appellant, was no more healthy than the appellant, and had no greater financial liabilities than did the appellant.

Conversely, a finding of undue hardship has been upheld in several other cases. In *Hanson v. Hanson*, 378 N.W.2d 28 (Minn. App.1985), the trial court's finding of undue hardship was upheld where there was a great disparity between the parties' incomes, financial needs, and earning potential. In that case, the appellant had a net worth of approximately $1 million, while the respondent, who could barely speak English, had few, if any, marketable skills.

In two other cases, a trial court's finding of undue hardship was upheld with a less severe disparity between the parties. In *Frederiksen v. Frederiksen*, 368 N.W.2d 769 (Minn.App.1985), a finding of undue hardship was upheld where the respondent suffered from serious emotional and physical problems which would probably necessitate costly medical treatment in the future. Respondent also had no marketable skills, while the appellant, despite having fluctuating incomes over the years, was a fairly successful farmer. Similarly, in *Roel v. Roel*, 406 N.W.2d 619 (Minn.App.1987), this court upheld a finding of undue hardship where both parties were unhealthy, the appellant (who had been awarded a larger share of nonmarital property) had few marketable skills, and the respondent, while earning a fairly insignificant income, had earned a substantial income in the past. In both of these cases an award based on undue hardship is upheld where the court feels that one party at least has the potential for adequate future income.

*Frederiksen* and *Roel* would seem to govern the outcome in this case. Although not currently earning a very significant income, appellant, based both on his past earnings and his real estate and insurance licenses, has at least the hope of significant income in the future. Conversely, respondent has no prior history of earning a significant income. And although respondent

may earn a significant income in the future by teaching, it was not an abuse of discretion for the trial court to presume that appellant's outlook is significantly brighter.

### 2. *Amount of award.*

Appellant, assuming arguendo that an unfair hardship exists, argues that the trial court violated Minn.Stat. § 518.58, subd. 2 by distributing to respondent over one-half of appellant's nonmarital property. Appellant claims significant nonmarital interests in both the Eden Prairie property and the Cass County property.

The trial court found that the Eden Prairie property was purchased by the parties on July 8, 1976 for $18,000. The purchase money was obtained from the sale of real property owned by appellant prior to the parties' marriage. At the time of the trial, the fair market value of the property was $145,000, with an unpaid mortgage balance of $40,000.

The trial court found that the Cass County property consisted of Lots 17, 18, and 19. Lots 18 and 19 were given to appellant by his parents as a gift and were therefore nonmarital property when acquired. The parties then spent $30,000.00 for a cabin built on these lots. The total fair market value of these unencumbered lots is $75,000.

Minn.Stat. § 518.54, subd. 5 defines "nonmarital property" as property that:

(a) is acquired as a gift, bequest, devise or inheritance made by a third party to one but not the other spouse;

(b) is acquired before the marriage; [or]

(c) is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b) * * *.

Under this definition, the Eden Prairie property and Lots 18 and 19 were appellant's nonmarital assets when acquired. Appellant argues that the court should have explicitly determined his current nonmarital interest in these properties. Failing such determination, the court could not know what percentage of appellant's nonmarital property it was remitting to respondent.

The present nonmarital value of a nonmarital asset used to acquire marital property is the proportion the net equity or contribution at the time of the acquisition bore to the value of the property at that time multiplied by the value of the property at the time of separation. The remainder of the equity increase is marital property and is distributed according to Minn.Stat. § 518.58. *Nardini v. Nardini*, 414 N.W.2d 184, 191 (Minn.1987). Sums expended during the marriage for improvements to nonmarital property, as well as the accompanying labor, constitute marital property. *Id.*

Both the Eden Prairie property and Lots 18 and 19 were initially appellant's nonmarital property. Since their acquisition, both properties have appreciated in value. Some of the appreciation is undoubtedly the result of marital efforts (e.g., the parties built a cabin on Lots 18 and 19 and a house on the Eden Prairie property). However, some of the appreciation may be due to normal market forces which have made the real estate itself more valuable. The court failed to make findings on this issue.

It is possible that appellant's nonmarital interests in these properties constitute over 50% of his total nonmarital interests. Indeed, appellant's sole other nonmarital interest was the Kemper Fund valued at $5,000. On remand, the trial court must make specific findings on the nonmarital interests possessed by both parties in all of their properties. This task is necessary to comply with Minn.Stat. § 518.58, subd. 2.

### II.

Appellant also argues that the trial court abused its discretion in refusing to automatically reduce his child support obligation as each child becomes emancipated. In *Erickson v. Erickson*, 409 N.W.2d 898, 901 (Minn.App.1987), upon a motion to modify child support, the trial court increased child support to $1400/month and ordered this level of support to continue until the parties' youngest child was 18 years of age or was emancipated. This court held that

the trial court's order constituted an abuse of discretion:

> This order increases the support per child by failing to cut back at the times of emancipation of two children. In addition, once the oldest child is emancipated, the amount of the award will be a deviation of the guidelines for the remaining two children. Any deviation from the child support guidelines should be accompanied by express supporting findings. Minn.Stat. § 518.551, subd. 5(e) (1986).

 We believe the trial court abused its discretion by not allowing for reduction of appellant's child support obligation as each child becomes emancipated. We hold that Minn.Stat. § 518.551, subd. 5(e) (1992) and *Erickson* require a trial court to prorate an obligor's child support obligation as each child becomes emancipated unless it makes specific findings justifying not doing so. No such findings were made here.

Respondent attempts to distinguish *Erickson* from the present case by noting that the obligor in *Erickson* had considerably more income than appellant. However, since Minn.Stat. § 518.551 (1992) already takes both income and the number of children into account, there is no merit in respondent's argument.

### III.

 Appellant also argues that the trial court abused its discretion in requiring him to pay the second half installment of the real estate taxes for 1991 and the homeowner's insurance premiums for the parties' Eden Prairie property. However, the trial court's decision on this issue can be viewed as simply part of the larger property division between the parties.

The court ordered appellant to pay homeowner's insurance premiums of $484.22 and real estate taxes, interest, and penalties of $2458.52. Given that the parties' total assets exceeded $400,000, this charge of expenses to appellant does not render the overall award inequitable.

### IV.

 Appellant argues that the trial court abused its discretion in making him

responsible for the payment of additional child support for August 1991. The August 17, 1990 order for temporary relief required appellant to pay child support to respondent of $167.13 per month from his employment income and additional child support from the cash flow received through the rental of the parties' Eden Prairie property. "Cash flow" was to be determined by deducting from the gross rental income the monthly mortgage payments, taxes, and insurance. No child support was paid from the cash flow of the Eden Prairie property in August 1991. Appellant claims the reason for this was that there was no cash flow from the rental of the property that month due to respondent's efforts to have the tenants evicted. The trial court rejected this argument, reasoning that management of the Eden Prairie property was appellant's responsibility.

The trial court's decision on this issue was not error. Respondent was not allowed to occupy the Eden Prairie property until September 1991. Even if the tenants did not pay for the August rent, appellant could and should have allocated any proceeds in lieu of rent to the payment of child support. This he failed to do.

### DECISION

We reverse the trial court on the child support issue and the property division. We remand for findings involving (1) a calculation of appellant's nonmarital interests in various pieces of property and (2) the effects of the capital gains taxes on appellant's 13–unit apartment building. The trial court should then reconsider its property division in light of these new findings.

**Affirmed in part, reversed in part, and remanded.**