In re the Marriage of Colleen C. OLSEN,
Petitioner, Respondent,

v.

Larry G. OLSEN, Appellant.

No. C7–95–2493.

Court of Appeals of Minnesota.

Aug. 13, 1996.

Review Granted Oct. 15, 1996.

Jeffrey D. Kuhn, Nelson & Kuhn, Ltd., Starbuck, for Respondent.

Robert V. Dalager, Fluegel, Helseth, McLaughlin, Anderson & Brutlag, Chartered, Morris, for Appellant.

Considered and decided by PARKER, P.J., and RANDALL and SCHUMACHER, JJ.

## OPINION

RANDALL, Judge.

■ In an appeal from the judgment and decree of dissolution, Larry G. Olsen challenges the trial court's designation as nonmarital certain lakeshore property gifted by respondent Colleen C. Olsen's uncle to Larry and Colleen Olsen, as joint tenants, during the marriage of the parties. Alternatively, appellant argues the trial court abused its discretion in refusing to apportion the property. We reverse and remand on the ground that respondent failed to rebut the statutory presumption that the property is marital.

## FACTS

The parties' 24–year marriage was dissolved by judgment entered on August 28, 1995. Both parties are employed full-time. Appellant's net income is approximately $1,440 per month, and respondent's net income is approximately $1,000 per month. Both parties waived any claim to spousal maintenance. Appellant was awarded marital assets with a total value of $144,704, including the homestead. Respondent was awarded marital assets totaling $8,452. To equalize the property division, respondent was awarded the sum of $68,126, to be paid by appellant in installments.

The parties also own, as joint tenants, certain undeveloped property on Lake Superior (the North Shore property). The agreed value of the North Shore property is $121,-000. Prior to the transfer to the parties by respondent's uncle, the property had belonged to various members of respondent's side of the family since 1880.

Respondent's uncle, Klemmet Anderson, deeded the North Shore property to the parties as joint tenants in two conveyances in 1989 and 1990, respectively. Klemmet Anderson's 1990 tax returns show a gift to each party of one-half interest in the North Shore property.

Klemmet Anderson testified he has a close relationship with respondent but does not feel that he knows appellant very well. At the time of the gift, Klemmet Anderson had no knowledge of any marital problems between the parties. Klemmet Anderson testified that he thought that by giving the North Shore property to respondent, it would be "kept in the Anderson family." Klemmet Anderson acknowledged he understood that the property was conveyed to both parties as joint tenants. He acknowledged that he knew appellant would not only be a co-owner after the deed, but also that he could end up owning the entire property in his own name if respondent predeceased him. Respondent testified appellant's name was put on the deeds at her direction because she thought that joint tenancy was the proper way for married persons to hold property.

The trial court determined that the North Shore property is respondent's nonmarital property because Klemmet Anderson's intent was to transfer the property to respondent alone, notwithstanding the form of title. The court declined to award appellant any part of the value of the North Shore property. This appeal followed.

## ISSUE

Did the trial court err in determining that appellant met her burden to show that the North Shore property was a gift to her only, despite the conveyance of the property to the parties as joint tenants?

## ANALYSIS

■ Whether property is marital or nonmarital is a question of law that this court may review with independent judgment, but the facts underlying the finding that property is marital or nonmarital will be set aside only if clearly erroneous. *Swick v. Swick,* 467 N.W.2d 328, 330 (Minn.App.1991), *review denied* (Minn. May 16, 1991). "Marital property" is property acquired by either party

during their marriage. Minn.Stat. § 518.54, subd. 5 (1994). In part, the statute defines "nonmarital property" as

> property real or personal, acquired by either spouse, before, during, or after the existence of the marriage, which
>
> > (a) is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse;
> >
> > (b) is acquired before the marriage
> > * * *.

*Id.*

■ The presumption of marital property is overcome by showing that the property is nonmarital. *Id.* A spouse claiming that property is nonmarital must prove the necessary underlying facts by a preponderance of the evidence. *Johnson v. Johnson,* 388 N.W.2d 47, 49 (Minn.App.1986).

Both parties agree that the North Shore property is presumptively marital, because it was acquired during the marriage. The trial court, however, found that the North Shore property was nonmarital, reasoning that Klemmet Anderson meant to make a gift to respondent only, but not to appellant. *See* Minn.Stat. § 518.54, subd. 5(a) (nonmarital property includes property acquired as a gift made by a third party to one but not to the other spouse).

■ First we start with the general proposition that evidence regarding the intent of the donor is relevant to the determination of whether the gift was made to one but not to the other spouse. *See Nolden v. Nolden,* 448 N.W.2d 892, 893–94 (Minn.App.1989) (trial court properly found gift to be nonmarital property where donor testified the gift was intended only for one spouse and not the other). Next we move on to the specifics. The conveyance of the property to the parties as joint tenants constitutes strong evidence of Klemmet Anderson's intent to give the property to both parties. The designation of both parties as recipients of the gift on Klemmet Anderson's tax return further corroborates the unambiguous wording of the deed. Klemmet Anderson had the right to give the property to respondent alone. He chose not to do so. When his accountant advised him that it would be to his tax advantage to gift the property to both respondent and appellant, he split the gift for his own benefit.

Respondent presented testimony of her uncle to the effect that his tax accountant "took care of this for him" and that he really does not claim to be an expert in taxes. But respondent concedes that the record shows the tax accountant explained to Klemmet Anderson why he should transfer the property to the couple, rather than to one alone, and that Anderson understood what the tax accountant suggested. The record shows that Anderson went along with the tax preparer's suggestion and signed the deed, knowing it was to the couple as co-owners, meaning joint tenants. Respondent disingenuously argues that somehow her uncle's consulting with a tax preparer takes away from the importance of the evidence of the recorded deed that is unambiguously a gift to both parties equally, not to one alone. We conclude the opposite. When a lay person searches out a professional, skilled in the preparation of legal documents, such as a tax accountant or an attorney, the fact that the legal document was prepared by a professional pursuant to the instructions of a client does not denigrate the importance of the document as the client's intent, but to the contrary, enhances it. Here, the tax accountant suggested to Klemmet Anderson that he would receive an economic advantage by splitting the gift between appellant and respondent. Anderson understood that and authorized the tax preparer to prepare a deed showing the property was to be transferred to the couple as joint tenants. The deed was so prepared. It is to that deed that Klemmet Anderson affixed his signature.

■ Much of respondent's argument, and the trial court's reasoning, is that the form of ownership of the property is not necessarily dispositive of the property's marital or nonmarital nature. *See* Minn.Stat. § 518.54, subd. 5 (property acquired by either spouse during marriage presumed to be marital, regardless of how title is held); *Berry v. Breslain,* 352 N.W.2d 516, 518 (Minn.App.1984) (homestead was wife's nonmarital property, based on evidence that transfer of the home-

stead to joint tenancy was to persuade mortgagee bank not to invoke due on sale clause rather than to create bona fide joint tenancy), *review denied* (Minn. Nov. 8, 1984). But the above quoted phrase is nothing more than a generalized phrase that proves nothing until the underlying facts of the case are examined.

In each and every case respondent cited to advance the above proposition, the underlying facts show why the generic phrase "the form of ownership of property is not necessarily dispositive of whether it is marital or nonmarital" came into being. Each case is built on a tracing problem. Property, concededly nonmarital at one point in time, for instance, acquired before marriage, or acquired during marriage as a true gift to one spouse or the other, had somehow become involved in a series of transactions where record title to the property changed and/or funds from the property were commingled in joint tenancy amounts, and/or marital funds were used to reduce debt on nonmarital property, and so forth. That is the constant thread in the cases stating that the form of the deed or the title of the owner of record is not necessarily dispositive. That statement was never meant to be read as a statement that the form of the deed or the fact of being the title owner of record is meaningless. The form of a recorded deed is always strong evidence of the transferor's intent and strong evidence of the identity of the transferee owner(s).

 We note that our decision leaves the door open for legitimate tracing problems. Tracing problems can arise when property that at one point in time, being nonmarital, has acquired some aspects of being marital. Then family law courts have a tracing problem on their hands, and thus have the right to trace and do equity. Here, to the contrary, there is no tracing problem. In truth, this real estate was never for one minute of one hour of one day nonmarital. It was transferred to the couple as joint tenants, and transferred to the couple during their marriage. It was transferred to the couple by a recordable legal document showing an unequivocal written express intent of the donor to give it to appellant and respon-

dent equally as co-owners and as joint tenants. Courts of equity, as are family law courts, have the power to trace nonmarital assets so that it finds its way to the true owner. But they do not have the power to summarily confiscate property from a true owner, and give it to somebody else merely because the *donor* has a change of heart, after the fact, and years down the road. For a family court to trace a nonmarital asset to its rightful owner, it has to start with property that was nonmarital at one time, but through the passage of years, has had its true ownership clouded. A court should not create a tracing problem when there is no tracing problem. There is none here. A court does not take marital property and summarily classify it nonmarital.

The record is devoid of any inference that the couple ever treated the property as anything but in co-ownership after the transfer. For instance, there is nothing in the record to show that shortly after the transfer, respondent tried to induce appellant to transfer his interest to her so that it would be in her name alone. The record is devoid of any facts showing that at any time during the marriage, any relative of respondent tried to induce the couple to "clarify" the title by acknowledging that it was respondent's alone. Instead, the record shows that the property was deeded to the couple as joint tenants, started as marital property, and continues as marital property. It was only when the marriage started to fail (years after the transfer) that respondent began to indulge in the sad, but predictable, soul-searching that led to the argument, "Well, now that I think about it, Uncle Klemmet really wanted me to have this property for myself."

Klemmet Anderson does not imply, much less allege, that his tax accountant either kept silent or actively misled him as to the form of the deed the accountant put together and its consequences. A clear economic advantage was presented to Klemmet Anderson by transferring the property to appellant and respondent as co-owners. He knowingly and voluntarily took that advantage. There is no evidence in the record directly rebutting the unambiguous language in the conveyances. Further, the record shows that Klemmet

Anderson's tax returns corroborated his intent of a gift to both parties. Also, and importantly, Klemmet Anderson never testified specifically that he intended to give the North Shore property to respondent only, and not to appellant. *Cf. Nolden*, 448 N.W.2d at 893–94 (trial court's finding of donor's intent was not clearly erroneous, based on testimony of donor and recipient spouse that the property was a gift to the recipient spouse only).

■ The trial court relied on the fact that the property has been in respondent's family for many years and that Klemmet Anderson has a close relationship with respondent but not with appellant. But what weight can be given to a gift from one side of the family in the face of an unambiguous recordable legal document that specifies co-donees, joint owners as joint tenants by name? Common sense tells us that the mere fact that property had previously belonged to one side of the family or the other is virtually meaningless. **By definition, every** gift from one spouse's relative during a marriage, **always** comes from the husband's side or the wife's side of the family. Evidence that the property in question previously belonged to one side of the family, or that the donor knew one of the joint tenants better than the other, without more, is insufficient as a matter of law to overcome the clear statutory presumption that property given by name and identification to both husband and wife during marriage is marital.

The case for land is even stronger than in the case for personal property. In Minnesota, similar to most states, a transfer of land, unlike personal property, has to be transferred by a standard legal conveyance, usually a quitclaim deed or a warranty deed. The legal conveyance requires the donor to name to whom the property goes. The law does not allow one to transfer land and record a deed, leaving the new owner's name blank. This donor signed his name to a deed with two donees on it, knowing there were two donees on it, and knowing that it created a joint tenancy. No analysis of when this property was nonmarital, and therefore should be fairly traced to one spouse or the other, is needed. The property was never nonmarital.

We reverse the trial court's legal determination that the North Shore property is nonmarital. We conclude, as stated, that it never, at any time, was nonmarital. It started out marital, and has always been a part of the marital estate.

We do not interfere with the equity powers of a court in a marriage dissolution. We note that a trial court is not required to divide marital property 50–50 between parties. *See Ruzic v. Ruzic*, 281 N.W.2d 502, 505 (Minn.1979) (division of marital property need not be mathematically equal; it need only be just and equitable). This has always been the law. A trial court can give one spouse or the other 51 percent, 61 percent, etc. of marital property, **if** that division is just and equitable, and if the record supports the trial court's findings, and if the findings support the trial court's conclusions of law. That has always been the only test.

In determining a fair division of the North Shore property, the trial court is entitled to consider all relevant factors listed in Minn. Stat. § 518.58, subd. 1 (1994). A trial court's equitable powers in a marriage dissolution extend to do what is fair and just. But there is no equitable power to take something valuable that is indisputably part of the marital estate, and summarily call it nonmarital just so it can be given to one spouse or the other.

Because we reverse the trial court's determination that the North Shore property is nonmarital, we need not reach the issue of whether the trial court abused its discretion in refusing to apportion nonmarital property.

## DECISION

The conveyance of the North Shore property to the parties as joint tenants constitutes strong evidence of the donor's intent to give the property to both parties. Respondent produced no evidence directly contradicting the unambiguous language of the conveyances and the tax return. The trial court erred when it concluded that respondent had, by a preponderance of the evidence, rebutted the statutory presumption that the North Shore property was marital. We reverse

and remand to the trial court for an equitable division of the North Shore property.

**Reversed and remanded.**

SCHUMACHER, Judge (dissenting).

I respectfully dissent. We must affirm the trial court's findings of fact supporting the conclusion that the North Shore property is nonmarital unless the findings are clearly erroneous. *See Campion v. Campion,* 385 N.W.2d 1, 4 (Minn.App.1986). "Clearly erroneous" means "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Northern States Power Co. v. Lyon Food Prods.,* 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975).

The conveyance of the property to the parties as joint tenants and the designation of both parties as recipients of the gift for tax purposes does not constitute conclusive evidence of Klemmet Anderson's intent. *See Montgomery v. Montgomery,* 358 N.W.2d 169, 172 (Minn.App.1984) (transfer of title into joint tenancy does not alone transform nonmarital property into marital property). The trial court found that Anderson's true intent to give the property to respondent alone is shown by the following facts: (a) respondent is Anderson's niece and Anderson wanted to keep the property in respondent's family; (b) Anderson has a close relationship with respondent but virtually no relationship with appellant; (c) title was placed in joint tenancy at respondent's request because both respondent and Anderson believed that joint tenancy was the proper form of title for a married person, not because Anderson intended to give the property to appellant; and (d) but for his marriage to respondent, appellant's name would not have been included in the transfer documents. Moreover, Anderson indicated his intent was to transfer the property to respondent. The record supports the trial court's findings. *See Kennedy v. Kennedy,* 403 N.W.2d 892, 897 (Minn.App. 1987) (appellate court must review evidence in light most favorable to trial court's findings).

Because it is the trial court's function to weigh conflicting evidence, I cannot say that the trial court clearly erred in finding that Anderson intended to give the property to respondent only. *See Moon v. Moon,* 378 N.W.2d 49, 53–54 (Minn.App.1985) (although joint ownership of note, coupled with wife's testimony, could have justified finding that forgiveness of note is marital property, it was not clear abuse of discretion for trial court to accord more weight to husband's evidence). I would affirm the trial court's legal determination that the North Shore property is nonmarital, because the underlying findings of fact are not clearly erroneous. In view of appellant's superior earning ability, I would also affirm the trial court's refusal to apportion respondent's nonmarital property. *See Reynolds v. Reynolds,* 498 N.W.2d 266, 271 (Minn.App.1993) (very severe disparity between parties required to sustain finding of unfair hardship necessary to apportion nonmarital property).