**In re the Marriage of Colleen C. OLSEN, petitioner, Appellant,**

v.

**Larry G. OLSEN, Respondent.**

No. C7–95–2493.

Supreme Court of Minnesota.

May 8, 1997.

---

Jeffrey D. Kuhn, Starbuck, for Appellant.

Robert Dalager, Fluegel, Helseth, McLaughlin, Anderson & Brutlag, Chtd., Morris, for Respondent.

## OPINION

BLATZ, Justice.

This case presents the issue of what is the appropriate analysis for determining whether real property obtained by a gift is marital or nonmarital property. The parties to this dispute wed on June 19, 1971 in Cook County, Minnesota. The contested property, located in Cook County (the "North Shore" property), was transferred in two transactions to Colleen C. Olsen and her then-husband, Larry G. Olsen, as joint tenants in 1989 and 1990 by Colleen's uncle, Klemmet (Klem) Anderson. The couple held the property until the dissolution of their marriage on August 28, 1995.

During dissolution proceedings, Colleen asserted that the North Shore property was nonmarital because her uncle intended to give the property to her alone and not to Larry. The trial court agreed and, upon dissolution, awarded the entire North Shore property to Colleen as a nonmarital asset. The court of appeals reversed, concluding that the property was a marital asset. We hold that the North Shore property is marital property and therefore affirm the court of appeals. *Olsen v. Olsen,* 552 N.W.2d 290, 294 (Minn.App.1996).

The North Shore property and surrounding area has been in Colleen's family since the 1880s. Eventually, the property passed to Colleen's father, Richard, and his two sisters, Hazel and Jean. Hazel held her portion of the property in joint tenancy with Klem, her husband and Colleen's uncle by

marriage. When Hazel died in September 1985, Klem became the sole owner of the property by right of survivorship.

Klem, who did not testify at trial but whose deposition was admitted in evidence, testified he had an "extremely close" relationship with Colleen and that they saw each other about once a year when Klem visited from Seattle where he and Hazel had been living. Klem said that he did not really know Larry. Colleen testified at trial that Klem and Larry had a "friendly" relationship, "but not real close."

After Hazel's death, Klem attempted to sell the North Shore property, but held on to it because he did not receive any offers. Larry and Colleen testified that at some point they approached Klem about purchasing the property. Although Klem did not recall purchase negotiations with the couple, he did recall that Colleen had indicated that she had an interest in the property and that he and Colleen toured the North Shore property together. Klem said that after looking at the property with Colleen, the idea came to him that "it would be nice to keep as much of the estate intact" as he could. Klem said: "I thought by giving it to Colleen we would still keep it in the Anderson [1] family."

After making the decision to give the property away, Klem contacted an attorney who drew up the documents to effectuate the gift. Klem then gave the property to Colleen and Larry in two installments in 1989 and 1990. Subsequently, Klem got a portion of the property back so that he could sell it to third party nonrelatives. Klem kept the $20,000 he received for the sale of the property.

The deeds transferring the property to Larry and Colleen provide that Larry and Colleen own the property as joint tenants with right of survivorship, a form of ownership with which Klem was familiar. Klem had acquired the North Shore property through survivorship and acknowledged that he knew that if Colleen died, Larry would own the property outright. In association with the transfer, Klem filed a federal gift tax return in 1990. Klem's gift tax return states that the 1989 transfer of land was to Larry and Colleen, one-half interest to each.

After a court trial, the trial court concluded that the North Shore property was nonmarital property. The trial court acknowledged that the deeds listed both parties as grantees in joint tenancy and that the gift tax return also named both Colleen and Larry, but concluded that "[n]otwithstanding the form of title," Klem did not intend Larry to obtain any interest in the property. "Because Klem Anderson intended to give the property to [Colleen] exclusively," the trial court reasoned, the North Shore property was nonmarital and Colleen's separate property.

The trial court pointed out that the property had been in Colleen's family since the 1880s and that Klem, during his deposition, stated that he wanted to keep the land in Colleen's family. "At several points during his deposition," the trial court noted, "Klem Anderson indicated his intent to transfer the property 'to Colleen'" and not to both parties. The trial court also reasoned that "[b]ut for his marriage to [Colleen], [Larry's] name would not have been included in the transfer documents." The trial court found that Colleen had not foreseen the dissolution of the marriage and believed that the appropriate form of title for a married person was joint tenancy. "It appears," the trial court noted, that Klem Anderson "contemplated only joint tenancy as the proper form of title for a married person."

The court of appeals reversed the trial court in a 2–1 decision, holding that "this real estate was never for one minute of one hour of one day nonmarital." *Olsen*, 552 N.W.2d at 293. The court of appeals concluded that Colleen did not meet her burden of showing the property was nonmarital because she failed to offer any evidence "directly contradicting the unambiguous language of the conveyances and the tax return." *Id.* at 294.

The issue presented is whether the trial court erred in concluding that the North Shore property was nonmarital property. Our review of the trial court's conclusions in

---

1. The property came from Klem's wife's parents, the A.M. Andersons. It is mere coincidence that Klem's last name and his wife's maiden name were the same.

dissolution cases is limited. Whether property is marital or nonmarital is a question of law, but a reviewing court must defer to the trial court's underlying findings of fact. *Pekarek v. Pekarek*, 384 N.W.2d 493, 498 (Minn. App.1986). However, if we are "left with the definite and firm conviction that a mistake has been made," we may find the trial court's decision to be clearly erroneous, notwithstanding the existence of evidence to support such findings. *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305 (1976). Moreover, when the "critical evidence is documentary, there is no necessity to defer to the trial court's assessment of the meaning and credibility of that evidence." *Northern States Power Co. v. Williams*, 343 N.W.2d 627, 630 (Minn.1984) (quoting *Great Northern*, 308 Minn. at 225, 243 N.W.2d at 305).

All property obtained by either spouse during the marriage is presumed to be marital property, regardless of the form of ownership. Minn.Stat. § 518.54, subd. 5 (1996). To overcome the presumption that property is marital, a party must demonstrate by a preponderance of the evidence that the property is nonmarital. *Wopata v. Wopata*, 498 N.W.2d 478, 484 (Minn.App. 1993); *see also* Minn.Stat. § 518.54, subd. 5. Nonmarital property includes property that is "acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse." Minn.Stat. § 518.54, subd. 5(a); *see also Berger v. Berger*, 308 Minn. 426, 427, 242 N.W.2d 836, 837 (1976) (noting that because property was bequeathed to the wife, but not the husband, it was nonmarital property). For nonmarital property to maintain its nonmarital status, it must either be kept separate from marital property or, if commingled with marital property, be readily traceable. *Wopata*, 498 N.W.2d at 484.

The question presented here, then, is whether the gift was made to only one spouse and not the other so as to be classified as nonmarital property.

Larry argues that the statute's plain wording—"acquired as a gift * * * *made* by a third party to one but not to the other spouse"—shows that the form of the transaction controls. *See* Minn.Stat. § 518.54, subd. 5(a) (emphasis added). Under Larry's analysis, because Klem gave the property to him and Colleen as joint tenants, the property is marital. Colleen, however, contends that the form of the transfer is less important and that the intent of the donor controls. Colleen asserts that the donor's intent should be deduced from the circumstances surrounding the gift. Colleen claims that the evidence clearly demonstrates that Klem intended to give the property only to her, and therefore the property is nonmarital.

We agree with both parties, in part. The most important factor in determining whether a gift is marital or nonmarital is the donor's intent. To constitute a valid gift inter vivos, the donor must intend to make a gift, the property must be delivered and the donor must absolutely dispose of the property. *Oehler v. Falstrom*, 273 Minn. 453, 456–57, 142 N.W.2d 581, 585 (1966). Although the issue of intent typically concerns whether the donor intended a gift at all, it logically follows that the identity of the donee also turns on the donor's intent. Questions of intent are fact questions. *Id.* at 457, 142 N.W.2d at 585. Donative intent is demonstrated by the surrounding circumstances, including the form of the transfer.

In this case, Colleen has the burden of proving the property was nonmarital. *See* Minn.Stat. § 518.54, subd. 5. The evidence offered to demonstrate the property's nonmarital character, however, was sparse. Colleen testified that she "imagine[d]" that the joint tenancy form of title was appropriate for married people and that she asked her uncle to place the property in joint tenancy. Klem said that he never really knew Larry and that he thought that by giving the property to Colleen he could keep the property in the Anderson family. Neither Colleen nor Klem, however, ever stated that Klem intended to give the property to Colleen *but not* to Larry. In fact, neither Colleen nor Klem was ever asked that question during the dissolution proceedings.

Moreover, the century-long history of the North Shore property in the Anderson family does not support Colleen's assertion that

Klem's intent was to give the property to Colleen only. Colleen's great-grandmother Anderson had sold some of the property to nonfamily members. The A.M. Andersons divided their share of the property among their children, including their daughter, Hazel, and her husband, Klem. Klem became the sole owner of Hazel's portion of the property when Hazel died. Subsequently, Klem listed the property for sale. The only apparent reason he did not sell it was because he did not receive any offers. And, when he had the opportunity to make $20,000, he took back a portion of the property from Colleen and Larry and sold it to nonrelatives.

We conclude that the evidence is not sufficient to rebut the presumption that the property is marital. The form of the transaction, while not dispositive, is compelling in the instant case because of Klem's knowledge of, and experience with, joint tenancies. Klem was fully aware of how joint tenancies operated. As the husband of Hazel, he became the sole owner of Hazel's family property as a surviving joint tenant, a fact he acknowledged during his deposition. Subsequent to his sole ownership of the property, he knowingly deeded the property to Larry and Colleen as joint tenants. In so doing, he gave both parties an interest in the property. *See Melina v. Melina,* 411 N.W.2d 204, 207 (Minn.App.1987); *Erdahl v. Erdahl,* 384 N.W.2d 566, 567 (Minn.App.1986) (holding that devise of real estate to one spouse was nonmarital and noting that had testator intended such property to be devised as marital property, "he could have designated appellant as a joint tenant").

Finally, also indicative of the donor's intent was the fact that Klem filed a gift tax return which stated he gave a one-half interest each to Larry and Colleen. This, in combination with the deeds, and the lack of evidence that Klem did not want Larry to be a donee leads us to the definite and firm conviction that the trial court erred when it concluded that the property was given only to Colleen. Klem gave the North Shore property to both Larry and Colleen during their marriage and Colleen failed to rebut the presumption that the property is marital by a preponderance of the evidence. We hold that the North Shore property is, therefore, marital property and should be divided as such.[2]

The decision of the court of appeals is affirmed.

2. Because we conclude the North Shore property is marital, we do not reach the issue raised by Larry in his brief concerning the trial court's refusal to invade the nonmarital estate.