**In Re the Marriage of Richard Dennis ANTONE, Respondent,**

v.

**Debra Kay ANTONE, Petitioner, Appellant.**

**No. C8–01–679.**

Supreme Court of Minnesota.

June 13, 2002.

Rehearing Denied July 16, 2002.

A. Larry Katz, Robert W. Due, Katz & Manka, Ltd., Minneapolis, for appellant.

Daniel J. Goldberg, Messerli & Kramer, P.A., Minneapolis, for respondent.

Michael D. Dittberner, Edina, for amicus curiae Family Law Section, Minnesota State Bar Association.

## OPINION

LANCASTER, Justice.

This is an appeal from a court of appeals' decision affirming a trial court's amended judgment dissolving the parties' marriage. Debra Kay Antone (appellant) claims the trial court erred by failing to recognize a marital interest in the appreciation of 18 rental properties, by failing to recognize a marital interest in the marital homestead, and by concluding that Richard Dennis Antone (respondent) had a nonmarital interest in a business started during the marriage. Because the trial court erred in its disposition of the rental properties, the marital homestead, and the business, we reverse and remand.

Appellant and respondent were married in 1986. Almost 12 years later, respondent petitioned for dissolution. In November 2000, the trial court entered a judgment dissolving the parties' marriage. The parties received joint legal custody of their two children. Appellant received sole physical custody of the children subject to visitation by respondent. Respondent was ordered to pay child support and spousal maintenance to appellant. The trial court awarded seven rental properties acquired during the marriage, 18 rental properties acquired before the marriage, and the capital stock and assets in Empire Products, Inc. (EPI) to respondent. The trial court ordered the homestead to be sold, and respondent was ordered to pay appellant $803,376 from the proceeds of the sale. We turn to the trial court's division of the property at issue in this appeal.

### The 18 rental properties

Respondent acquired 18 rental properties before his marriage to appellant.

Those properties consisted of a 12–unit apartment building, a triplex, and 16 single-family houses. Each property had an outstanding mortgage balance at the time of the marriage.

The trial court did not determine the fair market value of the properties at the time of the marriage. The parties stipulated to the fair market value at the time of the dissolution of one of the properties, and the trial court adopted the valuations submitted by appellant's appraiser of the remaining 17 properties. The trial court determined the properties' mortgage balances both at the time of the marriage and at the time of the dissolution.

Respondent used a management company to manage the properties. He instructed the company not to improve the properties and authorized it to make only the minimum amount of repairs necessary to maintain them. This prompted the trial court to conclude that market forces, rather than marital efforts, caused the properties to appreciate.

The trial court concluded that the rental income generated by the properties constituted marital income. The parties used the rental income to reduce the mortgage balances during the marriage. The trial court concluded that the amount by which the mortgage balances were reduced during the marriage was marital equity and that the remaining equity in the properties was respondent's nonmarital property.

*The marital homestead*

In 1978, respondent acquired what would become the marital homestead for $153,000. Although the trial court acknowledged that the parties' antenuptial contract valued the homestead at the time of the marriage at $375,000, the trial court did not state whether it adopted that value. When the parties married, the homestead was subject to a $93,000 mortgage. During the marriage, the parties refi-nanced the homestead. At the time of the dissolution, the homestead was subject to a first mortgage with a balance of $138,000, a second mortgage with a balance of $44,000, and a home equity line of credit secured by a third mortgage with a balance of $99,000. Because the mortgage balances increased during the marriage, the trial court concluded there was no marital equity in the homestead.

Although the trial court did not determine the exact value of the homestead at the time of the dissolution, the trial court found that it was worth more than $680,000 at dissolution. The trial court found that market forces caused the homestead's appreciation and there were no additions or other capital improvements during the marriage that would have increased the homestead's value. Because there was no marital equity in the homestead and no marital efforts contributed to the homestead's increased value, the trial court concluded that the homestead was entirely respondent's nonmarital property.

The trial court found that neither party could afford to continue living in the homestead and ordered it be sold. The trial court ordered the proceeds of the sale be paid in the following order: (1) costs of sale; (2) all encumbrances presently of record; (3) to appellant in the amount of $803,376; and (4) all remaining proceeds to respondent.

*Filters Corporation, Inc. and Empire Products, Inc.*

In 1975, respondent and Greg Anderson purchased Filters Corporation, Inc. (FCI) as equal partners from Anderson's parents. FCI was primarily a military contractor that manufactured fabric bags to hold explosive charges for tank shells.

In 1993, FCI invested in a new business venture to manufacture underwear for in-

continent people. The underwear business experienced substantial losses. Because of the losses, FCI ceased operations. In 1995, respondent and Anderson formed EPI, each owning 50%. Like FCI, EPI was a military contractor.

In 1997, respondent purchased Anderson's 50% interest in EPI. The trial court concluded that this purchase created a marital interest in half of the EPI stock. Respondent claimed that his remaining interest in EPI was nonmarital property that he traced to the 50% interest in FCI he owned at the time of the marriage. The trial court found that EPI made the same products for the same customers as FCI had before the marriage, that there was no marital effort to create new products or to change how the business operated, and that no marital interest was created by the change in corporate form from FCI to EPI because it was not an arm's-length transaction and no consideration was paid. The trial court concluded that respondent had a nonmarital interest in 50% of EPI.

Respondent moved for amended findings of fact and conclusions of law. The trial court denied respondent's motion. Appellant moved for amended findings of fact and conclusions of law or a new trial, and for a stay of the sale of the homestead. The trial court granted appellant's motion in part, amending its conclusions of law to require respondent to satisfy any difference if the proceeds of the homestead's sale were insufficient to pay appellant $803,376, and denied the remainder of appellant's motion.

Appellant appealed and respondent filed a notice of review to examine the spousal maintenance provision. The court of appeals affirmed. The court of appeals rejected appellant's argument that the trial court erred by failing to use the formula we adopted in *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn.1981), to divide the marital and nonmarital interests in the 18 rental properties. The court of appeals stated that use of *Schmitz* is a presumptive, but not mandatory, method to determine the marital and nonmarital interests in an asset. The court of appeals held that the trial court had adequately considered the facts and the law to hold that the market-related appreciation was respondent's nonmarital property. The court of appeals also affirmed the trial court's holding that the appreciated value of the homestead was respondent's nonmarital property. The court of appeals deferred to the trial court's conclusion that appellant had not submitted any credible evidence that the homestead had been improved during the marriage. Finally, the court of appeals held that the record supported the trial court's findings of fact and affirmed the trial court's holding that respondent had a 50% nonmarital interest in EPI.

## I.

A trial court has broad discretion in evaluating and dividing property in a marital dissolution and will not be overturned except for abuse of discretion. *Maranda v. Maranda*, 449 N.W.2d 158, 164 (Minn.1989). We will affirm the trial court's division of property if it had an acceptable basis in fact and principle even though we might have taken a different approach. *Servin v. Servin*, 345 N.W.2d 754, 758 (Minn.1984). We defer to the trial court's findings of fact and will not set them aside unless they are clearly erroneous. *Maurer v. Maurer*, 623 N.W.2d 604, 606 (Minn.2001). Whether property is marital or nonmarital, however, is a question of law subject to de novo review. *Olsen v. Olsen*, 562 N.W.2d 797, 800 (Minn. 1997).

All property acquired by either spouse during the marriage is presumed to be

marital property, without regard to the form of ownership. Minn.Stat. § 518.54, subd. 5 (2000); *Olsen,* 562 N.W.2d at 800. To overcome the presumption that property is marital, a party must demonstrate by a preponderance of the evidence that the property is nonmarital. *Olsen,* 562 N.W.2d at 800; *see also* Minn.Stat. § 518.54, subd. 5. Nonmarital property includes property "acquired before the marriage," property that is "acquired in exchange for" property acquired before the marriage, and "the increase in value of property" acquired before the marriage. Minn.Stat. § 518.54, subd. 5(b)-(c) (2000).

## II.

We first address the trial court's division of the 18 rental properties that respondent acquired before the marriage. Each property was subject to a substantial mortgage at the time of the marriage. Appellant concedes that the net equity at the time of the marriage is respondent's nonmarital property. Appellant also concedes that a portion of the appreciation during the marriage is respondent's nonmarital property. In addition, the trial court found, and respondent concedes, that the amount by which the mortgage balances were reduced during the marriage is marital property.[1] Thus, the issue before us is whether the trial court properly characterized *all* of the market-related appreciation during the marriage as respondent's nonmarital property.

■ Appellant argues that the formula we adopted in *Schmitz* and its progeny is the proper method to determine the marital and nonmarital interests of apprecia-

tion of rental properties acquired before the marriage whose mortgages were reduced during the marriage with marital income. Respondent contends that the *Schmitz* formula applies only to property acquired during the marriage. For property acquired before the marriage, respondent maintains that appreciation due to marital efforts is marital, whereas appreciation due to market forces is nonmarital. Respondent further argues that even if the *Schmitz* formula was applicable to the 18 rental properties, its use by the trial court is discretionary.

In *Schmitz,* a husband and wife purchased a duplex during their marriage. 309 N.W.2d at 748. They lived in one unit of the duplex and rented the other unit. *Id.* at 748–49. They made the down payment using the husband's nonmarital funds and made mortgage payments using rental income from the unit in the duplex. *Id.* In an action for dissolution of the marriage, the husband argued that the duplex constituted nonmarital property because it was acquired in exchange for a down payment derived from his nonmarital funds. *Id.* at 750. He maintained, therefore, that he was entitled to the entire increase in equity. *Id.* We rejected his argument, holding that the duplex was, in part, a marital asset even though the down payment was made with nonmarital funds. *Id.* We approved the analysis of *Woosnam v. Woosnam,* 587 S.W.2d 262 (Ky.Ct.App.1979), and affirmed the trial court's division of the duplex in *Schmitz* because of its "minimal discrepancy [from the result that would have been reached had the trial

1. The dissent refuses to acknowledge that the equity acquired during the marriage is marital property. Instead, the dissent repeatedly characterizes this amount as "a decrease of mortgage indebtedness on nonmarital property." The trial court concluded, and respondent does not dispute, that this amount is

marital property. The dissent also refuses to acknowledge that the rental income from the properties is marital income. Instead, the dissent characterizes it as "passive income." The trial court concluded that the rental income is marital income. Respondent did not challenge that conclusion on appeal.

court strictly applied the *Woosnam* formula] in an area of law committed in large part to the discretion of the trial court." *Schmitz*, 309 N.W.2d at 750. We have summarized the *Schmitz* formula as follows:

> The present value of a nonmarital asset used in the acquisition of marital property is the proportion the net equity or contribution at the time of acquisition bore to the value of the property at the time of purchase multiplied by the value of the property at the time of separation. The remainder of equity increase is characterized as marital property * * *.

*Brown v. Brown*, 316 N.W.2d 552, 553 (Minn.1982).

Although we stated in *Brown* that the *Schmitz* formula is one "by which a trial court might correctly apportion the increase in equity between marital and nonmarital assets," we reversed the trial court's division of the homestead. *Brown*, 316 N.W.2d at 553. On remand, we instructed the trial court to reexamine its property distribution in accordance with the *Schmitz* formula. *Brown*, 316 N.W.2d at 553; *cf. Kelly v. Kelly*, 371 N.W.2d 193, 197 (Minn.1985) (affirming trial court's division of homestead because it showed "due allowance" for the guidelines established in *Schmitz* ).

■ Respondent contends that we limited the applicability of the *Schmitz* formula to property acquired during the marriage with nonmarital funds in *Nardini v. Nardini*, 414 N.W.2d 184 (Minn.1987). We disagree. In *Nardini*, we held:

> [T]he increase in the value of nonmarital property attributable to the efforts of one or both spouses during their marriage, like the increase resulting from the application of marital funds, is marital property. Conversely, an increase in the value of nonmarital property attrib-

utable to inflation or to market forces or conditions, retains its nonmarital character.

*Id.* at 192. We illustrated how to apply our holding in a lengthy hypothetical. The hypothetical involved real property that was owned by the husband and subject to a mortgage at the time of the marriage. *Id.* at 192–93. During the marriage, the husband and wife used marital funds to reduce the mortgage balance. *Id.* at 193. We stated that "[i]nasmuch as the real property comprised both marital and nonmarital interests, the interests should be apportioned according to the [*Schmitz* ] formula." *Nardini*, 414 N.W.2d at 193.

Thus, the *Schmitz* formula may be used to determine marital and nonmarital interests in property acquired during the marriage with a nonmarital down payment, 309 N.W.2d at 750, as well as property acquired before the marriage, *Nardini*, 414 N.W.2d at 193. For property acquired before the marriage, the formula uses the time of the marriage instead of the time of the purchase. Thus,

> [t]he present value of a [nonmarital interest in property acquired before the marriage] is the proportion the net equity * * * at the time of [the marriage] bore to the value of the property at the time of [the marriage] multiplied by the value of the property at the time of separation. The remainder of equity increase is characterized as marital property * * *.

*See Brown*, 316 N.W.2d at 553.

Application of the *Schmitz* formula to property acquired before the marriage is consistent with section 518.54, subd. 5. The formula recognizes that the net equity at the time of the marriage is nonmarital property because it was "acquired before the marriage." *See id.*, subd. 5(b). Assuming the property appreciates during the

marriage, the formula also recognizes that the increase in value of the property acquired before the marriage—that is, the net equity at the time of the marriage—is nonmarital property.

In this case, respondent owned 18 rental properties at the time of the marriage. They consisted of a triplex, a 12–unit apartment building, and 16 single-family houses. Each was subject to a mortgage at the time of the marriage. Marital equity in the properties was created because the parties used marital funds to reduce the mortgage balances during the marriage. The trial court's characterization of all of the market-related appreciation during the marriage as respondent's nonmarital property ignores the fact that those same market forces caused the marital equity to appreciate. The dissent also fails to distinguish between the marital and nonmarital interests in the properties, even though the parties agree that the equity created by paying down the mortgages during the marriage was marital property. By the dissent's reasoning, the appreciation of that marital property would be awarded to the holder of the nonmarital portion of the properties, depriving the marital estate of any return on its investment. We therefore conclude that the trial court should have applied the *Schmitz* formula to apportion the marital and nonmarital interests in the 18 rental properties.

We hold as a matter of law that a portion of the market-related appreciation during the marriage is marital property. We remand to the trial court to determine the properties' values at the time of the marriage and to apply the *Schmitz* formula to determine the marital and nonmarital interests.

### III.

We now turn to the trial court's division of the marital homestead. Appellant contends that respondent withdrew his nonmarital equity by refinancing the homestead. Appellant asserts the trial court erred by failing to apply the *Schmitz* formula after accounting for respondent's withdrawal of his nonmarital equity. Respondent argues that there was no marital equity created in the homestead because the mortgage balances increased during the marriage. Respondent maintains that there is no basis in fact or law for appellant's assertion that respondent withdrew his nonmarital equity from the homestead.

We reject appellant's argument that respondent withdrew his nonmarital equity in the homestead by refinancing the homestead. As already noted, property obtained by either spouse during the marriage is presumed to be marital property. Minn.Stat. § 518.54, subd. 5; *Olsen*, 562 N.W.2d at 800. To overcome this presumption, "a party must demonstrate by a preponderance of the evidence that the property is nonmarital." *Olsen*, 562 N.W.2d at 800; *see also* Minn.Stat. § 518.54, subd. 5. The trial court did not make findings as to how the parties used the proceeds from the refinanced first mortgage and the second mortgage. The trial court found that the debt secured by the home equity line of credit was marital. Appellant concedes that she does not know how the proceeds from the additional encumbrances were used. Thus, appellant failed to demonstrate by a preponderance of the evidence that the loan proceeds were used by respondent for nonmarital purposes.

We also reject the trial court's conclusion that there was no marital equity in the homestead because the mortgage balances increased during the marriage. By refinancing the homestead during the marriage, the marital estate effectively borrowed against its interest in the home-

stead. We reverse the court of appeals' decision affirming the trial court's disposition of the marital homestead. We remand to the trial court to determine the fair market value of the homestead at the time of the marriage and at dissolution, and to apply the *Schmitz* formula to determine the marital and nonmarital interests in the homestead.

### IV.

We now address the trial court's disposition of EPI. The parties agree that the trial court properly concluded that respondent's purchase in 1997 of Anderson's interest in EPI created a marital interest in 50% of the EPI stock. Appellant argues the trial court erred by concluding that respondent's remaining 50% interest in EPI is respondent's nonmarital property. In the alternative, appellant argues that, even if respondent had traced the 50% interest in EPI to his nonmarital interest in FCI, the trial court failed to acknowledge that the appreciation in the value of respondent's interest during the marriage is marital property. In response, respondent argues that the trial court did not err by concluding that respondent's remaining interest in EPI was nonmarital property.

The trial court described how FCI ceased operations and the formation of EPI:

In 1993 through 1995, [FCI] invested in a new business venture to manufacture incontinent underwear. The company took on a number of additional investors as stockholders and lenders. The underwear business however never made money and conversely experienced substantial losses. The underwear venture was eventually discontinued by the company. As part of the winding up of the affairs of this business venture, FCI ceased doing business and a new corporation, EPI[,] was created in 1995. Mr. Anderson and [respondent] remained the equal owners of the new corporation and EPI continued the military contractor business. The other shareholders in FCI who had invested in the underwear business had no interest in EPI.

The trial court explained its decision that respondent had a 50% nonmarital interest in EPI:

[Appellant] asserted that FCI became insolvent and was completely liquidated and that EPI was created as an entirely new company. The evidence presented by [respondent] established that the company is presently making the same products for the same customers that FCI had in 1986 prior to the parties' marriage. There was therefore no marital effort that went into creating new products or any changes in the way the business is run. Nor did the change in corporate form from FCI to EPI create any marital interest, as this change did not constitute a purchase since it was not an arm's length transaction and no consideration was paid. Nor did the coming and going of the other shareholders for the underwear business and the debt for the underwear venture that was assumed by EPI and later paid off create any marital interest as the former business has remained unchanged.

Appellant contends that the trial court's finding that the formation of EPI was a "change in corporate form from FCI" is clearly erroneous. We agree.

The record reveals that respondent and Anderson purchased FCI as equal partners from Anderson's parents in 1975. Approximately 20 people invested in FCI's underwear venture. One of the investors invested and loaned a total of approximately $1 million, taking a secured interest in FCI's assets, including its receivables, inventory, and equipment. The underwear

business experienced significant losses that ultimately caused FCI to become insolvent. When FCI was liquidated in 1995, its secured creditors were repaid. Its unsecured creditors were not fully repaid.

After FCI's liquidation, Anderson and respondent formed EPI. Anderson and respondent each invested $10,000 in EPI and loaned $10,000 to EPI. EPI used Anderson's and respondent's capital contributions, as well as a bank loan, to purchase equipment from a secured creditor of FCI. EPI continued the military subcontractor business that FCI established.

Based on our review of the record, we conclude that the trial court's finding that there was "a change in corporate form from FCI to EPI" is clearly erroneous. After experiencing substantial losses from its expansion into the underwear business, FCI was insolvent and was liquidated in 1995. FCI's secured creditors were repaid, but its unsecured creditors were not. After FCI's liquidation, EPI was formed, in part, with respondent's capital contribution. EPI used Anderson's and respondent's capital contributions as well as bank financing to purchase equipment from a secured creditor of FCI. Thus, there was no "change in corporate form" from FCI to EPI.

We conclude that the evidence is insufficient to rebut the presumption that respondent's interest in EPI is marital. Although EPI continued the military subcontractor business started by FCI, EPI was formed as an entirely new business. Without respondent's capital contribution during the marriage, respondent would not have had any interest in EPI. Respondent failed to demonstrate by a preponderance of the evidence that 50% of EPI's stock is his nonmarital property.

Reversed and remanded.

GILBERT, Justice.

While I concur with the majority's analysis as to the parties' homestead property and the EPI Corporation, I disagree with its conclusion that the trial court should have applied the *Schmitz* formula to apportion the marital and nonmarital interests in the 18 rental properties acquired by respondent prior to the marriage. The majority breaks new ground, unsupported by either the Minnesota Statutes or this court's previous decisions, by holding that almost all of the purely market-related passive appreciation of nonmarital property during the marriage is marital property.

The majority disregards unambiguous statutory language defining increase in value of nonmarital property owned before, during, or after marriage as being nonmarital in favor of its concern for not "depriving the marital estate of any return on its investment," i.e., a return on the principal reduction in the mortgages on the 18 nonmarital properties. This sweeping language may affect not only prior owned property identified in Minn.Stat. § 518.54, subd. 5(b) (2000), but also the property excluded under a valid antenuptial contract under subdivision 5(e) of the same statute. While the majority may consider this to be good policy, it is up to the legislature to set that policy. Where a statute is unambiguous, we should honor its plain meaning. *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 210 (Minn.2001). However, the majority avoids performing any appropriate statutory analysis and does not even find the statute at issue to be ambiguous, yet ignores the statute's clear intent, thereby amending the statute by judicial fiat.

Under Section 518.54, subdivision 5, nonmarital property can be "acquired by either spouse before, during, or after the existence of their marriage." The majori-

ty focuses solely on the language about property acquired before the marriage. However, the statute clearly provides for the acquisition of nonmarital property during the marriage, specifically including the increase in value of nonmarital property acquired before marriage within the definition of nonmarital property. *Id.*, subd. 5(b)-(c). The majority then transforms a decrease of mortgage indebtedness on nonmarital property paid solely from passive income to modify section 518.54, subdivision 5(c), and capture a portion of the increase in value of the nonmarital property, even though the legislature has defined this increase in value as nonmarital property. The legislature did not provide that a decrease of mortgage indebtedness on nonmarital property could be used to convert a portion of the increase in value of nonmarital property to marital property. Interestingly, nowhere in the statute is the marital estate return on investment rationale ever mentioned, rather it is an unsupported result that the majority has created without any authority. The majority's holding applying the *Schmitz* formula would appear to apply with equal force to property that has otherwise been excluded by a valid antenuptial contract where there are decreased mortgage balances and increases in market value.

The facts in this case are dramatically different than those presented in *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn.1981), *Nardini v. Nardini*, 414 N.W.2d 184 (Minn.1987), or any of the other cases cited by the majority. In order to reach the desired result, the majority equates the pay down of mortgage balances with the acquisition of property subsequent to marriage. However, it is undisputed that respondent acquired all 18 properties before his marriage to appellant. (The seven other rental properties acquired after the marriage were treated as marital.) Furthermore, it is undisputed that these 18

properties increased in value during the marriage solely as the result of market forces. Accordingly, any increase in value for these 18 nonmarital properties during the marriage should remain nonmarital.

The majority states that *Nardini* supports transforming these statutorily defined nonmarital assets into marital assets. However, unlike *Nardini*, where there was no dispute that the value of the stock at dissolution was "attributable to the efforts of the marital partners over the course of more than 30 years of marriage," 414 N.W.2d at 194, none of the increased value of the 18 properties in this case can be attributed to either marital effort or labor. In fact, the record makes clear, and the trial court found, that both respondent and appellant chose not to spend any of their marital funds or exert any personal labor on improving any of the 18 properties. Instead, a professional property management company rented and maintained the properties and passive market forces led to all of the increased value of the nonmarital properties. As a result, these properties retained their nonmarital character and the *Schmitz* formula should not apply. There was also no commingling of funds between marital and nonmarital accounts, transfers of titles between spouses, or new acquisitions in this asset group.

The majority also cites to dicta from *Nardini* in support of its conclusion that the *Schmitz* formula should apply. However, the majority fails to adhere to the unambiguous holding of *Nardini*: "[A]n increase in the value of nonmarital property attributable to inflation or to market forces or conditions, retains its nonmarital character." 414 N.W.2d at 192. The 18 nonmarital properties increased in value solely as a result of market forces or conditions, thereby retaining their nonmarital character. Furthermore, *Schmitz* involved a homestead property acquired after mar-

riage and held in joint tenancy by both spouses. 309 N.W.2d at 748. Rent from the duplex in *Schmitz* was commingled and both parties worked to maintain the property. *See id.* The accretions from assets that were not commingled or improved upon by the efforts of both parties were held to be nonmarital. *Id.* at 750.

The majority boldly states as to undisputed nonmarital property that "[w]e hold as a matter of law that a portion of the market-related appreciation during the marriage is marital property." This proposition is not supported by any citation to our case law or statutory authority. The majority opinion also imports a "net equity" concept into its rationale to modify both the definition of nonmarital property acquired before the marriage and the increase in value of that property. It relies on the formula used in *Schmitz*, but fails to acknowledge that the *Schmitz* property was acquired after marriage in joint tenancy by both spouses and the nonmarital equity from the sale of another property was used to acquire a new homestead property in both spouses' names. The majority, without explanation, simply equates a mortgage principal pay down from passive rental income generated from the nonmarital properties to be equivalent to an acquisition of a new property after marriage. The majority then states that the "trial court's characterization of all of the market-related appreciation during the marriage as respondent's nonmarital property ignores the fact that those same market forces caused the marital equity to appreciate." It is unclear what the majority means by this, especially since this proposition is also not accompanied by any citation to any authority.

As the majority points out, we are to affirm a trial court's division of property in a marriage dissolution if such division had an acceptable basis in fact and principle *even though we might have taken a different approach. Servin v. Servin,* 345 N.W.2d 754, 758 (Minn.1984). Based on the unambiguous statutory language, the trial court correctly applied the law. At the same time, even if the majority's approach were acceptable, it certainly cannot be construed as the only acceptable approach. The record shows that the trial court carefully considered both the factual and legal components in ruling that the increase in the value of the 18 properties was due solely to passive, market forces. The trial court's findings as to these properties were based on this careful consideration, giving full credit to appellant for the reduction in mortgage balances. The trial court was well within the broad discretion afforded to it in dividing the parties' property. While the majority believes that the trial court should have taken a different approach, the trial court was without authority to do so and its conclusion that the passive appreciation of respondent's nonmarital property remained nonmarital was not an abuse of discretion. Accordingly, I would affirm the court of appeals as to the 18 nonmarital properties.

PAGE, Justice (concurring in part and dissenting in part).

I join in the concurrence and dissent of Justice Gilbert.

PAUL H. ANDERSON, Justice (concurring in part and dissenting in part).

I join in the concurrence and dissent of Justice Gilbert.