In re the Marriage of Danielle
M. KERR, petitioner,
Respondent,

v.

Jonathan R. KERR, Appellant.

No. A08–1721.

Court of Appeals of Minnesota.

Aug. 18, 2009.

Christine J. Cassellius, Jessica L. Sanborn, Sharon K. Hills, Severson, Sheldon, Dougherty & Molenda, Apple Valley, MN, for respondent.

Richard A. Stebbins, Elizabeth M. Carroll Trimble, Stebbins & Hegranes, LLC, Paul, MN, for appellant.

Considered and decided by STAUBER, Presiding Judge; TOUSSAINT, Chief Judge; and BJORKMAN, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Appellant Jonathan R. Kerr challenges the district court's distribution of nonmarital homestead interest and retirement-account funds to respondent Danielle M. Kerr. Because the district court did not err in finding that neither respondent's payment of closing costs and taxes when the parties purchased their homestead nor the parties' refinancing or establishment of a home-equity line of credit decreased respondent's nonmarital homestead interest, we affirm in part. But, because the district court failed to make adequate findings regarding its award of retirement-account funds to respondent, we reverse in part and remand for additional proceedings consistent with this opinion.

## FACTS

**The Homestead**

In 2002, the parties purchased their marital homestead for $248,000. Closing costs, taxes, and a down payment amounted to $56,985, of which appellant contributed $2,000 and respondent the remaining

$54,985, derived from the sale of her non-marital home.

In 2003, the parties refinanced their homestead mortgage, increasing the mortgage balance from $193,874 to $200,000. The homestead was then valued at $255,000. In 2004, they took out a second mortgage; the homestead was then valued at $265,000 and the first mortgage had a balance of approximately $195,000. The second mortgage of $55,000 secured a home-equity line of credit of which the parties accessed approximately $53,000. Payments on both mortgages were made exclusively with the parties' marital earnings.

At the time of the dissolution trial, the homestead had a fair market value of $305,000. It was subject to a first mortgage in the amount of $171,149 and a second mortgage in the amount of $20,738; the equity was $113,113.[1] The district court found that respondent's nonmarital share of the homestead equity was $67,619 and appellant's nonmarital share was $2,440.

## Account # 380

Before the marriage, respondent set up an IRA account (referred to as account # 380), to which she added funds before and during the marriage. At trial, the parties stipulated that account # 380 had a total balance of $46,139 and a nonmarital portion with a value of at least $21,243.

During their marriage, the parties kept separate checking and savings accounts. Neither party had access to the other's accounts. Respondent testified that, from 2002 to 2005, her father gave her a $3,000 check each year to be deposited into account # 380. She deposited these checks

into her own separate savings or checking account, and she later deposited the funds into account # 380 as follows: 2002–$3,000; 2003–$3,000;[2] 2004–$3,500; and 2005–$4,000. Respondent admits that, during the marriage, she deposited $4,500 of marital funds into account # 380. In its dissolution order, the district court found that respondent's nonmarital share of account # 380 is $33,591.

## ISSUES

1. Must respondent's nonmarital contribution towards closing costs and taxes for the purchase of the marital homestead be deducted from her nonmarital interest in the homestead prior to the application of the *Schmitz* formula?

2. Must the refinancing and second mortgage of the parties' homestead be considered in the calculation of respondent's nonmarital homestead interest?

3. Were adequate findings made regarding the property division of respondent's retirement account # 380?

## ANALYSIS

Whether property is marital or nonmarital is a question of law we review de novo, but we will disturb the district court's underlying factual findings only if they are clearly erroneous. *Antone v. Antone,* 645 N.W.2d 96, 100 (Minn.2002).

All property acquired during a marriage is presumed to be marital. Minn. Stat. § 518.003, subd. 3b (2008). A spouse may overcome this presumption by demonstrating, by a preponderance of the evidence, that an asset is nonmarital. *Olsen v. Olsen,* 562 N.W.2d 797, 800 (Minn.1997). "Nonmarital property" includes property

---

1. $305,000 (value of homestead) –$191,887 (total of mortgages)=$113,113 (equity).

2. Because respondent could not produce a copy of her father's check from 2003, she

stipulated at trial that this amount constitutes marital property.

acquired by one spouse before the marriage and any property acquired in exchange for such property. Minn.Stat. § 518.003, subd. 3b(b), (c). "[I]ncreases in value of nonmarital property remain nonmarital if shown to be attributable solely to market forces or conditions, such as simple appreciation in value of an asset." *Chamberlain v. Chamberlain,* 615 N.W.2d 405, 413 (Minn.App.2000) (quotation omitted), *review denied* (Minn. Oct. 25, 2000).

■ A nonmarital interest in property may be established on the basis of credible testimony. *See, e.g., Doering v. Doering,* 385 N.W.2d 387, 390 (Minn.App.1986) (affirming district court's resolution of conflicting testimony regarding degree of party's nonmarital interest in homestead). We defer to the district court's credibility determinations. *Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn.1988).

### 1. Closing Costs and Taxes

■ The *"Schmitz* formula may be used to determine marital and nonmarital interests in property acquired during the marriage with a nonmarital down payment." *Antone,* 645 N.W.2d at 102, (citing *Schmitz v. Schmitz,* 309 N.W.2d 748, 750 (Minn.1981)). The present value of a party's nonmarital interest in a marital homestead is calculated by dividing the party's equity in the property at the time of purchase by the value of the property at the time of purchase and then multiplying by the value of the property at the time of dissolution; the remainder of the equity increase is marital property. *Id.* "The formula in *Schmitz* need not be strictly applied." *Charlson v. Charlson,* 374 N.W.2d 473, 476 (Minn.App.1985). "It is sufficient that the trial court arrive at a figure which is close to the figure it would have arrived at had it used the *Schmitz* formula." *Id.*

The district court found that respondent's contribution of $54,985 towards the closing costs, taxes, and down payment applied to the purchase of the marital home gave her an initial nonmarital interest of 22.17% of the home's value. Appellant argues that the closing costs and taxes (together, $6,490) should have been deducted from the total amount of respondent's down payment, reducing it to $50,495, and reducing respondent's initial nonmarital interest to 20.36%. Appellant argues that, by using respondent's entire contribution to calculate her nonmarital interest, the district court "create[d] equity where none existed, resulting in an unjust conclusion." He offers no legal support for this argument.

■ Respondent counters that, when applying the *Schmitz* formula, a district court is not required to reduce a nonmarital contribution by the amount of closing costs and taxes paid. *See Schmitz,* 309 N.W.2d at 750 (holding that entire contribution made from one party's nonmarital assets to purchase marital homestead shall be used to calculate that party's nonmarital interest in homestead). We agree.

The district court did not err by failing to deduct closing costs and taxes before calculating respondent's nonmarital interest in the homestead.

### 2. Refinancing and Second Mortgage

■ When they refinanced their homestead in 2003, the parties rolled the closing costs into the new mortgage, decreasing their total equity in the homestead by $5,923. Appellant claims that the district court erred by not considering this decrease in calculating respondent's nonmarital interest. But nonmarital interest is not lost or decreased by increasing the marital debt secured by a homestead: "By refinancing the homestead during the marriage, the martial estate effectively borrow[s] against its interest in the home-

stead." *Antone*, 645 N.W.2d at 103.[3] The district court did not err in failing to find that the 2003 refinancing diminished respondent's nonmarital interest in the homestead.

Nor did the district court err in failing to find that the 2004 second mortgage diminished respondent's nonmarital interest. Appellant contends that, because the parties removed $53,000 of equity from the homestead by obtaining a home-equity line of credit, the second mortgage reduced respondent's nonmarital interest. But again, a party who has nonmarital equity in a homestead does not lose that equity by increasing the debt secured by the homestead.[4] *Id.*

The district court did not err in applying *Schmitz* to conclude that respondent's nonmarital interest in the homestead is $67,619 or 22.17% of its $305,000 value on dissolution.

## 3. Respondent's Retirement Account # 380

■ The district court shall make "findings regarding the division of the property" in a dissolution action. Minn. Stat. § 518.58, subd. 1 (2008). Because the district court failed to make adequate findings regarding account # 380, we remand for further findings in two areas.

■ First, the district court acknowledged that the monetary gifts respondent received from her father "were deposited into her non-joint checking or savings account," a "portion" of which was "later invested" in account # 380, but made no explicit findings as to the marital or nonmarital nature of these gifts. Nonmarital property includes a gift "made by a third party to one but not to the other spouse." Minn.Stat. § 518.003, subd. 3b(a). In determining whether a gift is made to one spouse to the exclusion of the other, the most important factor is the donor's intent. *Olsen*, 562 N.W.2d at 800. Intent is essential to determining both whether a gift was intended at all and to whom it was intended to be made. *Id.* Intent issues are fact questions that depend on the surrounding circumstances. *Id.* When marital and nonmarital assets have been commingled, the party asserting the nonmarital claim must adequately trace the nonmarital funds in order to establish their nonmarital character. *See, e.g., Crosby v. Crosby*, 587 N.W.2d 292, 296 (Minn.App.1998), *review denied* (Minn. Feb. 18, 1999). Whether a nonmarital interest has been traced is also a question of fact. *See, e.g., Doering*, 385 N.W.2d at 390–91. Absent sufficient findings, we cannot review these factual determinations.

Second, the district court listed respondent's nonmarital share in each of the three funds in account # 308 and determined that their total value was $33,591 but did not explain how it arrived at the number of shares she had in each fund. Without speculating, we cannot determine the district court's rationale for awarding respondent $33,591 as a nonmarital portion of account # 380.

---

**3.** Appellant relies on *Senske v. Senske*, 644 N.W.2d 838, 841 (Minn.App.2002) (finding that, when parties refinanced marital home, *"all of the equity in the home, including respondent's nonmarital share, was extinguished."* (emphasis in original)). But *Senske* was decided approximately one month before *Antone*. To the extent that the holding in *Antone*, this court follows *Antone*.

*Senske* may be inconsistent with the holding in *Antone*, this court follows *Antone*.

**4.** Appellant is not claiming that there was insufficient marital equity in the homestead at the time of the second mortgage to cover the $53,000 removed without affecting respondent's nonmarital interest, so we do not address that issue.

We reverse and remand this award to the district court for further findings on this issue.

## DECISION

The district court did not err in awarding respondent $67,619 and appellant $2,440 in homestead equity pursuant to the *Schmitz* formula but failed to make adequate findings regarding division of account # 380.

**Affirmed in part, reversed in part, and remanded.**