*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1285**

In re the Marriage of: Nicole Ruth Sela, petitioner,
Respondent,

vs.

Amit Yitzhak Sela,
Appellant.

**Filed August 10, 2015
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27FA1266

Brian L. Sobol, McGrann Shea, Carnival Straughn & Lamb, Chtd., Minneapolis, Minnesota (for respondent)

Gregory M. Miller, Wm. Christopher Penwell, Mark Thieroff, Siegel Brill, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Minge, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REYES**, Judge

In this marital-dissolution appeal, appellant-husband Amit Sela argues that the district court's award of certain insurance proceeds is inequitable and that the district court's reasons for the award are not supported by the record. We affirm.

**FACTS**

The marriage of appellant, the owner of a roofing business, and respondent Nicole Sela was dissolved in January 2012 by a stipulated judgment and decree (decree). The decree required appellant to pay respondent $20,000 per month in child support, $25,000 per month in spousal maintenance, and a deferred property settlement of $1,800,000. The deferred property settlement was to be made over the course of 44 payments, starting in September 2017 and ending in July 2028.

The decree also resolved the parties' interests in multiple businesses and pieces of real property, one of which was a home located in Minnetonka known as the Westernesse property. As security for the spousal-maintenance payments, child-support payments, and the property-settlement payments, the decree awarded Westernesse to respondent. The decree described the value of the Westernesse property as follows:

> In 2010, this property had a tax assessed value of $450,000.00. This value was based on significant construction defects at the home which need repair. The tax assessed value of the property for tax year 2011 is $1,020,000.00. The parties are currently appealing this assessment as this tax value is based on the incorrect supposition that the construction defects have been repaired. Currently, there are in excess of $600,000.00 worth of construction defects which need to be repaired to this

> property and, therefore, the current value of the property is no greater than $450,000.00. This property has current encumbrances in the approximate amount of $1,100,000.00 in favor of Commerce Bank.

Although the decree awarded Westernesse to respondent, the house remained titled in the names of both parties as trustees of respondent's revocable trust. Westernesse would then be awarded to appellant outright once he satisfied his payment obligations. The decree also awarded appellant the exclusive use and possession of the home, but required respondent to be "solely responsible for payment of the mortgage on the homestead, together with insurance, taxes and utilities on the home as provided [in the decree] so long as [appellant] is paying his child support obligation in full." Appellant was also responsible for paying the costs of repairs, including the construction defects.

Two important events took place after entry of the decree. First, the parties voluntarily decided to enter into an arrangement through which their finances remained mixed. As a part of this arrangement, appellant would deposit funds directly into respondent's bank account. These deposits were not specifically allocated as child-support or spousal-maintenance payments. To facilitate the overall arrangement, respondent provided appellant with a number of pre-signed blank checks, which appellant would use to make payments on behalf of respondent. The parties stated that they came to this arrangement because respondent was not experienced in paying bills.[1]

---

[1] The district court found the parties' stated reasons to be not credible. The district court found that appellant's use of the funds far exceeded his deposits related to child support, spousal maintenance, and payment of expenses for respondent.

Second, the parties learned that the Westernesse home had experienced hail damage from a 2010 storm. After its discovery, and after entry of the decree, appellant submitted an insurance claim for the hail damage. The insurance company paid the claim, issuing two checks totaling $510,797 which were paid to respondent's bank accounts. Respondent later alleged in an affidavit that the insurance funds were disbursed at the discretion of appellant through the arrangement previously discussed. In 2013, upon the advice of her attorney, respondent refused to continue to provide blank checks to appellant. Thereafter, appellant stopped paying child support and maintenance.

In May 2013, the parties filed cross motions related to the comingling of their funds, including the disposition of the insurance proceeds. Pursuant to a stipulation by the parties, the district court appointed an expert under Minn. R. Evid. 706 to prepare an accounting to determine what payments were owed to respondent. The expert allocated the insurance proceeds to appellant. Both parties filed cross motions relating to the expert's accounting—appellant requested that the district court accept the accounting in its entirety, and respondent objected to the disposition of the insurance proceeds. Following an evidentiary hearing, the district court concluded that because the parties had not considered the insurance claim in the initial property division, it was an omitted asset, and therefore an equal division of the proceeds from the claim was fair and equitable. Appellant filed a motion for amended findings and a new trial, arguing that the district court's decision was not justified by the evidence and was contrary to law. Appellant's motion was denied, and this appeal followed.

**D E C I S I O N**

At the time of dissolution, "the [district] court shall make a just and equitable division of the marital property of the parties." Minn. Stat. § 518.58, subd. 1 (2014). "[P]roperty division need not be mathematically equal to be just and equitable." *Justis v. Justis*, 384 N.W.2d 885, 888 (Minn. App. 1986), *review denied* (Minn. May 29, 1986). "District courts have broad discretion over the division of marital property and appellate courts will not alter a district court's property division absent a clear abuse of discretion or an erroneous application of the law." *Sirek v. Sirek*, 693 N.W.2d 896, 898 (Minn. App. 2005). A district court abuses its discretion in dividing property if it resolves the matter in a manner "that is against logic and the facts on the record." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984). "We will affirm the [district] court's division of property if it had an acceptable basis in fact and principle even though we might have taken a different approach." *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002). The appellate court gives great deference to the district court's factual findings and will not set them aside unless they are clearly erroneous. *Id*.

Appellant makes a general argument that the district court abused its discretion because splitting the insurance proceeds equally was not just, equitable, and lacked a basis in principle. In making this argument, appellant contests a number of the district court's findings as being unsupported by the record. We address each below.

**I.     The hail damage was not separate and distinct from the known construction defects.**

Appellant argues that the record shows that the hail damage from the 2010 storm must be considered separate and distinct from the construction defects. Appellant's argument is essentially as follows. In the decree, the parties stipulated that, although the 2011 tax value of the home was $1,020,000, the home possessed $600,000 worth of construction defects, which thereby lowered its value to "no greater than $450,000." Because the 2010 hail damage was unknown to the parties at the time of the decree, the hail damage must be separate and distinct from the repairs needed to remedy the construction defects.

Using this argument, appellant asserts that paragraph 40(c) of the district court's order, which found that appellant had failed to "establish[] that the damage attributable to the 2010 storm was separate and distinct from the nature of repairs (and diminishment of value) caused by the known construction defects," is clearly erroneous. Appellant then repeats a variation of that argument to contest the district court's findings in paragraphs 40, 40(d), and 40(e). Paragraph 40 found that awarding the insurance proceeds exclusively to appellant "would provide a significant financial benefit . . . , offsetting the diminished value of the property, without providing [respondent] with a corresponding benefit from the marital estate." Appellant argues that the insurance proceeds cannot be classified as "offsetting" the diminished value of the home when appellant is responsible for repairing the construction defects, *in addition to* the hail damage. Paragraph 40(d) finds that "[n]othing in the Judgement and Decree anticipates [appellant] would be

6

entitled to outside proceeds to offset 85% of the diminished value from the known construction defects from previously unknown and undivided marital resources." Appellant again argues that this finding is clearly erroneous because the hail damage represented *additional* damage. Lastly, paragraph 40(e) provides:

> Because the overall property settlement was based on the stipulated diminished value and known need to repair the construction defects, applying the insurance funds to correct the repairs [appellant] agreed to assume would result in a significantly more favorable overall property settlement for [appellant] than was provided in the stipulated judgment and decree. This would provide an immediate benefit to [appellant] in his occupancy of the home, result in a higher tax value for the home (taxes [respondent] is required to temporarily pay) and disrupt the balance of the overall stipulated property award.

Appellant argues that because the district court conflated the repairs needed for the hail damage and the repairs needed for construction defects (and that appellant was responsible for *both*), appellant would not receive any benefit by being awarded all of the insurance proceeds.

All of these arguments flow from the notion that the 2010 hail damage was separate and distinct from the construction defects contemplated in the decree. But contrary to appellant's assertions, the record does not establish that the hail damage and construction defects were, in fact, readily distinguishable from each other. Importantly, the record is devoid of information relating to the insurance claim made on the 2010 hail damage, an insurance claim made by appellant himself. The only information available on review is the expert's report identifying approximately $510,000 in funds which were transferred from appellant's insurance company to an account in which the parties

7

comingled their funds.  But this report alone only provides a dollar value.  It does not provide any information about what the actual repair costs would be, whether they were actually made, or what the specific cause of the damage was.

At the new-trial motion hearing, appellant's counsel stated that the 2010 storm specifically damaged Westernesse's roof and siding.  But appellant's counsel also stated that the "construction defects" referenced in the decree were related to water intrusion and subsequent mold damage.  Even taking the uncorroborated assertions of appellant's counsel as true—which the district court is not required to do, *Varner v. Varner*, 400 N.W.2d 117, 121 (Minn. App. 1987) ("The finder of fact is not required to accept even uncontradicted testimony if the surrounding facts and circumstances afford reasonable grounds for doubting its credibility.")—they do nothing to solve the question of whether the 2010 storm damage to the roof and siding contributed to the water intrusion and mold damage the parties knew about in 2012.  In fact, the decree even states that in 2010, the home "had a tax assessed value of $450,000.00" which was "based on *significant construction defects* at the home which need repair."  (Emphasis added).  If the significant construction defects referenced here were the same defects that lowered the 2011 tax value of the home, then it appears that the damage to the roof and siding occurred during the same year as the water intrusion.  But again, appellant failed to provide any documentation explaining how the two are separate and distinct.

Moreover, appellant's assertions are illogical.  Appellant would have this court believe that the approximately $510,000 worth of insurance proceeds are exclusively for hail damage which exists separately from, and in addition to, the $600,000 worth of

8

damage from the construction defects. But the 2012 decree states that once the $600,000 worth of construction defects is subtracted, the value of the home "is no greater than $450,000." Appellant has not explained why the insurance company would pay out a claim for $510,000 worth of hail damage on a home worth only $450,000.

Based on the lack of information related to the damage to the home and the illogical nature of appellant's assertions, the district court's finding that "[appellant] [did] not establish that the damage attributable to the 2010 storm was separate and distinct from the nature of the repairs" is not clearly erroneous. We note that while neither party bears an affirmative burden of proof in a division of martial property, the division is still "made on the evidence submitted by both parties." *Haefele v. Haefele*, 621 N.W.2d 758, 765 (Minn. App. 2001), *review denied* (Minn. Feb. 21, 2001). Here, appellant simply failed to submit evidence that the hail damage was separate and distinct from the construction defects, and the district court's disposition reflected that failure. The district court made detailed, thorough findings of fact which are not clearly erroneous, and we will not set them aside on appeal. *Antone*, 645 N.W.2d at 100.

## II.    The district court's disposition did not create a windfall for respondent

The district court concluded that "[i]f the value of this previously unknown marital asset is divided equally between the parties, each party's overall relevant financial condition remains consistent with the overall property division set forth in the Stipulated Judgment and Decree." Appellant argues that this finding is clearly erroneous because an equal division of the insurance proceeds would represent a windfall for respondent. We disagree.

9

The Westernesse property's entire role in the decree—that it would first act as security for appellant's payments but ultimately be transferred to appellant upon the final payment—was predicated on a stipulated reduced value of $450,000. This figure was based on known construction defects resulting in $600,000 worth of needed repairs. What the parties did not contemplate was the existence of an insurance claim which could generate $510,000. Accordingly, this claim provides a benefit for both parties: appellant can pay off repair costs and receive a higher-valued home once his other payments are complete, and the payments to respondent are now secured by collateral with a higher value. In essence, the insurance proceeds represent a windfall for not one party, but both. Moreover, a party to a dissolution is not considered to have abandoned all right to an asset unintentionally omitted. *Brink v. Brink*, 396 N.W.2d 95, 97 (Minn. App. 1986). Thus, the district court's equitable division simply reflects the increased value of a previously unconsidered marital asset and because such a disposition is not "against logic and the facts on the record," we affirm. *Rutten*, 347 N.W.2d at 50.[2]

**Affirmed.**

---

[2] We recognize that the parties represented that there is a $1.1 million mortgage on the property. The record on appeal and the parties' briefs and arguments do not raise any issue regarding the interest of the mortgagee in the insurance proceeds or the application of the proceeds for the benefit of the mortgagee.