*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0155**

In re the Marriage of:
Lana Michelle Kerola, petitioner,
Respondent,

vs.

Greg William Kerola,
Appellant.

**Filed November 7, 2016
Affirmed
Jesson, Judge**

Washington County District Court
File No. 82-FA-14-4981

Heather Monnens, GDO Law, White Bear Lake, Minnesota (for respondent)

Jerry A. Burg, The Law Office of Jerry A. Burg, Minneapolis, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Stauber, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

On appeal in this marital dissolution dispute, appellant-husband argues that the district court improperly classified a loan against his retirement plan as his nonmarital property and failed to grant him a cash award of his nonmarital inheritance. Because the district court did not err by classifying a loan that benefitted husband's nonmarital

residence as nonmarital property and did not abuse its discretion in designating assets awarded to the parties, we affirm.

## FACTS

In 2015, the district court dissolved the four-year marriage of appellant Greg Kerola and respondent Lana Rogers, formerly known as Lana Kerola. Greg works for Allina Health System; Lana works for Polar Semiconductor. The parties have no children in common. Each party owned a residence before the marriage and when they married, they lived in Greg's home in White Bear Lake and rented out Lana's condominium in Woodbury.

In 2015, after a petition for dissolution was filed, the parties stipulated that each of them would be awarded that party's premarital home "as . . . nonmarital property at no value, subject to any encumbrances thereon." They also stipulated to a partial division of other property, including two of Greg's retirement plans and Lana's retirement plan. But they retained additional issues for trial, including the marital or nonmarital character of a loan taken against Greg's Allina 401(k) plan, as well as the disposition of an inheritance that Greg had received, which was applied to debts during the marriage. They agreed to submit these issues in writing to the district court.

*Allina 401(k)*

The parties agreed to value Greg's Allina 401(k) plan at $39,418. In 2013, Greg took out a loan of approximately $10,000 against the 401(k). The loan proceeds were deposited into the parties' joint checking account and were spent to repair mold and

2

structural damage in the garage of the White Bear Lake home, which had occurred before the parties' marriage.

The parties submitted competing expert testimony on the marital-nonmarital character of the 401(k) loan and its proceeds. Greg's expert, Dax Stoner, treated the loan and its repayment as marital, and opined that $23,174 of the plan's value was marital, and $16,244 was nonmarital. Lana's expert, Mark Zingle, treated the loan and its repayment as nonmarital, and opined that $32,158 of the plan's value was marital, and $7,260 was nonmarital.

*Greg's inheritance*

In 2010, Greg inherited $54,500, which he placed in a Trustone Financial account. In 2011, Lana was added to that account as a co-owner. After spending a portion of the inheritance, the parties agreed to invest the remainder and placed approximately $22,000 in a Trustone Wealthbuilder account in Greg's name.

In 2013, Lana moved $22,000 from that account to a Wings Financial account for a few days briefly and then moved it to a Franklin Templeton investment account in her name. Lana alleges that Greg, who was the listed beneficiary on the latter account, was aware of the transfer because he received statements showing that the funds had been moved. Greg alleges, however, that he did not know that the account was solely in Lana's name.

In 2014, after the parties separated, Lana withdrew the funds from the Franklin Templeton account and applied them in two places. First, she reimbursed herself $8,000, including interest, which she had borrowed in 2013 to satisfy the second mortgage on the

3

White Bear Lake home, which the parties had wished to pay off. To satisfy the mortgage, she increased a loan against a Buick that she had purchased in 2012 and used the proceeds from the Buick refinance to pay off the second mortgage.

Second, Lana used $13,435 of the account funds to pay off a secured loan on a Bayliner boat, which the parties had purchased in 2012. Lana alleges that she had been paying on the boat loan, but she could no longer afford that expense when the parties separated. She alleges that she requested permission from Greg to sell the boat, and he either failed to respond or refused to do so until July 2015. She also alleges that, although Greg was proposing to sell the boat and split the proceeds, that solution was unreasonable because he had been unwilling to work with her to sell the boat in the spring or summer to maximize the profits, and she had concerns that he would not cooperate in selling it. She therefore requested that the district court grant Greg all interest in the boat and allocate that interest as partly marital and partly nonmarital.

The district court issued its findings of fact, conclusions of law, and judgment, adopting Lana's proposed marital and nonmarital split of the Allina 401(k). The district court also found that the boat had a value of $15,000, granted Greg a nonmarital interest of $13,435, and designated the remaining $1,565 as marital property. The district court found that Greg was not entitled to repayment of the funds Lana used to pay off the second mortgage on the White Bear Lake home because he had benefitted from the use of those funds. Greg appeals.

4

# DECISION

## I. *The district court did not err by assigning the loan from Greg's Allina 401(k) as nonmarital property.*

Greg argues that the district court erred by assigning the loan taken against his Allina 401(k) as his nonmarital property. He argues that the loan, whose proceeds were used to pay for repairs on the White Bear Lake property, originated and was spent during the marriage and was therefore marital property. Therefore, he maintains, he is entitled to a larger proportion of the remaining Allina 401(k) funds as his nonmarital property.

We first note that the parties stipulated before trial that each of them would be awarded their premarital residence, together with any encumbrances, and the district court granted those residences to each party as nonmarital property. Stipulations are favored in dissolution cases to simplify and expedite litigation, and if accepted by the district court, they are merged into the judgment. *Shirk v. Shirk*, 561 N.W.2d 519, 522 (Minn. 1997). Therefore, once the district court approved the stipulation and the judgment was entered, the terms of the resulting judgment, including the determination that each party would retain all ownership of his or her home purchased before the marriage, operated as a final determination of their rights in that real property. *See id.*

The determination of whether property is marital or nonmarital is a legal conclusion, which this court reviews de novo, but the findings supporting the conclusion are reviewed for clear error. *Burns v. Burns*, 466 N.W.2d 421, 423 (Minn. App. 1991). Nonmarital property includes property that was acquired by either spouse before the marriage, property acquired in exchange for nonmarital property, and the appreciation in value of nonmarital

5

property. Minn. Stat. § 518.003, subd. 3b (2014). Property is presumptively marital if it is acquired during the marriage, but a spouse may defeat that presumption by showing by a preponderance of the evidence that the property is nonmarital. *Baker v. Baker*, 753 N.W.2d 644, 649-50 (Minn. 2008). The district court treats the division of debt in the same manner as the division of assets. *Justis v. Justis*, 384 N.W.2d 885, 889 (Minn. App. 1986), *review denied* (Minn. May 29, 1986).

The district court found that, "[W]hile the loan was taken out during the marriage, the White Bear Lake home received the benefit of the loan[,]" and it concluded that the loan was nonmarital property. Greg argues, however, that because the loan proceeds from the 401(k) were used during the marriage to repair the home in which the parties were then living, the loan should have been designated as marital. He maintains that Lana failed to meet her burden to show that the loan was his nonmarital property because the proceeds, which were placed in the parties' joint checking account, were used for ordinary and necessary repairs, and she did not argue before the district court that they increased the home's value. *Cf. Schmitz v. Schmitz*, 309 N.W.2d 748, 750 (Minn. 1981) (providing a formula for allocating the increase in value of property during a marriage between marital and nonmarital components). But Greg does not contest the district court's finding of fact that the loan proceeds were used to remedy conditions that existed in the White Bear Lake home before the parties' marriage. On this record, the district court did not clearly err by finding that the White Bear Lake home, which the parties agreed was Greg's nonmarital property, received the benefit of the loan.

6

Greg also argues that a loan taken against an asset during a marriage is taken against the marital interest in the asset, so that the loan against the 401(k) should be considered a loan against the parties' marital property. He relies on *Kerr v. Kerr*, 770 N.W.2d 567, 570-71 (Minn. App. 2009), in which this court concluded that when a husband and wife refinanced their homestead, the resulting decrease in equity was attributable to the marital portion of the equity and did not diminish the wife's nonmarital interest. *Id.* *Kerr* is inapposite, however, because here, the loan proceeds were spent entirely to benefit Greg's nonmarital property, the White Bear Lake home. We therefore conclude that the district court did not err by assigning the proceeds of the 401(k) loan as Greg's nonmarital property.[1]

## II.    *The district court did not abuse its discretion by granting Greg the boat to reflect his nonmarital interest in that asset.*

Greg argues that the district court abused its discretion by declining to award him the cash remaining from his inheritance and instead awarding him a nonmarital interest in the Bayliner boat. The district court has broad discretion in the division of property, and we will affirm a district court's division if it has an acceptable basis in fact and principle, even if we might have taken a different approach. *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002). Although the district court must divide the marital property in a "just and

---

[1] We also note that, even if the district court did err in its designation of the loan as nonmarital, in order to obtain reversal based on error, a party must show significant prejudice resulting from the error. *Loth v. Loth*, 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949); *see Wibbens v. Wibbens*, 379 N.W.2d 225, 227 (Minn. App. 1985) (declining to remand for de minimis error). On this record, when Greg received value for the repairs to his nonmarital home, we cannot conclude that he has shown significant prejudice by his failure to receive a larger portion of the remaining Allina 401(k) as his nonmarital property.

equitable" fashion, it need not equally divide that property. *White*, 521 N.W.2d at 878 (citation omitted).

Greg maintains that Lana dissipated his nonmarital inheritance by using a portion of it to pay off the debt on the boat and repay herself for a debt that she incurred on the Buick. *Cf.* Minn. Stat. § 518.58, subd. 1a (2014) (stating that, during the pendency of the action, the parties owe a fiduciary duty to each other and may not transfer or encumber marital assets except in the usual course of business or for necessities). He argues that she did not consult him and improperly spent a portion of his inheritance without his knowledge, and the judgment awarded him the boat, but left him without the inheritance funds as a liquid asset.

Here, the district court did not decline to award Greg his nonmarital property; rather, it awarded him the proceeds of his nonmarital property in the form of a nonmarital asset that could be sold. *See* Minn. Stat. § 518.003, subd. 3b (2014) (defining a party's nonmarital property to include property "acquired in exchange for" nonmarital property). Greg does not contest that the parties purchased the boat together, that Lana attempted to contact him to sell the boat, and that he was unresponsive to her efforts. Under these circumstances, we cannot conclude that the district court abused its broad discretion by designating Greg's nonmarital inheritance of $13,435 to be awarded in the form of an interest in the boat.[2] We further note that Greg seeks both the return of $13,435 from his

---

[2] Greg does not argue specifically that he did not benefit from Lana's use of the other portion of the inheritance funds to pay down the mortgage on his home. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that issues not briefed are forfeited).

inheritance and an order that the boat be sold, with him receiving one-half the proceeds. Because this portion of his inheritance now only exists as equity in the boat, Greg would receive a windfall if he were to receive both the $13,435 and one-half of the proceeds from a boat sale.

Finally, Greg seeks an adjustment of the equalizer payment ordered by the district court, based on his other arguments as to property division. Because Greg asserts no other mathematical error in the equalizer, in view of our affirmance of the district court's order, we decline to order such an adjustment.

**Affirmed.**

---

We conclude nonetheless that the district court's assignment of that repayment to him does not represent an abuse of discretion.